COWELL *v.* COLORADO SPRINGS COMPANY

1. Objections to the form of a verdict must be made in the court below and before the jury is discharged. An objection that the verdict found "the issue" instead of "the issues," or for "the plaintiff" instead of "the plaintiffs," cannot be raised in the supreme court for the first time.

2. Objections to evidence must be made on the trial, and the ground of objection must then be particularly stated if the evidence is of such a nature that its inadmissibility may be obviated by the introduction of further testimony.

3. The act of the legislative assembly of February 11, 1870, authorizing the formation of corporations for the purpose of encouraging immigration, held to be a rightful subject of legislation under section six of the Organic Act.

4. A corporation having been recognized in the exercise of its corporate functions by legislative enactments, all inquiry into its original organization is precluded.

5. One who deals with a corporation in its corporate capacity cannot afterward question collaterally the legality of the corporate existence.

6. When an instrument creating a trust does not disclose the beneficiary, it does not necessarily follow that the grantor is the beneficiary.

7. The refusal of the court to give instructions not supported by evidence in the case cannot be assigned for error.

8. A condition in a deed, granting an estate in fee, that intoxicating liquors shall never be manufactured, sold or otherwise disposed of as a beverage in any place of public resort in or upon the premises granted, or upon any part thereof, the grantor reserving the right upon condition broken to declare the deed void, and all right, title and interest in the premises in such event to revert to the grantor, and the grantee consenting to the condition and reservation ; *Held* to be a valid condition, binding upon the grantee, not repugnant to the estate granted, and that upon condition broken the grantor might maintain ejectment, upon proof of the breach, without previous entry, demand or notice.

9. Where an exception goes to the whole charge, and error cannot be maintained upon a part, the exception will not avail.

*Appeal from District Court of Pueblo County.*

THE National Land and Improvement Company and the Colorado Springs Company were corporations authorized by law to acquire and hold lands, and to dispose of them by sale or otherwise. Charles B. Lamborn, as trustee, re-

ceived a patent from the government of the United States for certain lands situated in El Paso county, Colorado. Subsequently, and on the 13th of March, 1872, Lamborn, describing himself as trustee, conveyed the lands described in the patent to the National Land and Improvement Company of El Paso county. On the 14th of March, in the same year, the last-named company conveyed a portion of these lands to the plaintiff, the Colorado Springs Company. In May, 1873, the plaintiff conveyed to the defendant, in fee, of the lands last mentioned, two certain lots described as lot numbered one in block numbered ninety-two, and lot number twenty-one in block numbered eighty-three in the town of Colorado Springs. The deed from plaintiff to defendant contained a condition restricting the sale of intoxicating liquors upon the premises granted, which condition is set out in the opinion. The plaintiff claimed that the defendant had broken this condition and brought an action of ejectment in the El Paso district court. Among other matters it was contended by the defendant that the condition in the deed was repugnant to the estate granted. Upon a trial in the district court in El Paso the plaintiff obtained a verdict. This verdict was set aside and a new trial granted under the statute. Upon the second trial the jury failed to agree, and the venue was then changed, upon application of the defendant, to Pueblo county. Upon the trial of the cause in the district court of Pueblo county, the plaintiff again prevailed, judgment was rendered upon the verdict, and the defendant appealed.

Messrs. MILLER, BECK & CLOUGH, for appellant.

Messrs. DAVIDSON & HARRISON, for appellee.

BRAZEE, J. The appellee brought ejectment for certain premises, claiming title in fee simple. Plea, not guilty.

The evidence on the part of the plaintiff showed a certificate of its incorporation, filed in the office of the county clerk and recorder of El Paso county, June 29th, 1871. This

certificate purported to incorporate appellee pursuant to the laws of Colorado, for the purpose of aiding and encouraging immigration to the Territory, and to purchase, acquire, hold, possess, sell, convey and dispose of lands, town lots, mineral springs and other property; to build, construct and operate ditches, wagon roads, and mills for manufacturing lumber and other articles of wood.

The plaintiffs also gave in evidence an act of the General Assembly of the State of Pennsylvania, incorporating the National Land and Improvement Company, with general corporate powers, and power to receive, hold and grant real and personal property; explore, locate and improve lands; transport emigrants and merchandise; construct houses and buildings; manufacture, trade and traffic; colonize, organize and form settlements; operate mineral and other lands, and improve and work the same.

The evidence further showed a patent from the United States, to Charles B. Lamborn, *trustee,* dated September 20, 1870, conveying the lands in controversy, among other lands — in all four hundred seventy-six acres and fifty-eight one hundredths of an acre; a deed from Charles B. Lamborn, trustee, to the National Land and Improvement Company of El Paso county, dated March 13, 1872, conveying the lands in question with other lands, and covenanting for quiet and peaceable possession — consideration $16,000; a deed dated March 14, 1872, from the National Land and Improvement Company, to the Colorado Springs Company, conveying the lands in question, among other lands, with full covenants — consideration $30,000; a deed dated May 20, 1873, from the "Colorado Springs Company, a corporation duly created under the laws of the Territory of Colorado," to the appellant, conveying the premises in controversy, with full covenants, and containing the following condition: "Witnesseth, that the said party of the first part, for and in consideration of the sum of $250, to it in hand paid by the said party of the second part, and also for the further consideration of the agreements between the parties hereto, for themselves, their heirs, successors, and legal representa-

tives, that intoxicating liquors shall never be manufactured, sold or otherwise disposed of as a beverage in any place of public resort, in or upon the premises hereby granted, or any part thereof; and it is herein and hereby expressly reserved by the said party of the first part, that in case any of the above conditions concerning intoxicating liquors are broken by the said party of the second part, his assigns or legal representatives; then this deed shall become null and void, and all right, title and interest, of, in, and to the premises hereby conveyed, shall revert to the said party of the first part, its successors and assigns, and the said party of the second part by accepting this deed, for himself, his heirs, executors, administrators and assigns, consents and agrees to the reservations and conditions aforesaid."

Evidence was also given tending to show that after the execution and delivery of the last-mentioned deed, the defendant had sold and disposed of intoxicating liquors, as a beverage, in a place of public resort, upon the premises granted in the last-mentioned deed, and there was no evidence substantially tending to controvert the fact of such sale.

Defendant's motion for nonsuit was overruled. The jury found defendant guilty, and that the plaintiff was the owner of the premises described in the declaration. Defendant's motion for a new trial was overruled, and judgment was given upon the verdict against the defendants.

It is objected that the jury found the *defendant*, instead of the *defendants*, guilty, and that this is error. The objection is merely technical. The defendants plead jointly to the declaration, " not guilty ;" this made a single issue which the jury were impaneled to try, and sufficiently identifies the parties defendant. It was competent for the court to have amended the verdict below, if the form of the verdict had been made the ground of exceptions, or to have sent the jury out to further consider the form of their verdict. The verdict would no doubt have been corrected in respect to form, in the court below, if attention had been

called to it there. This specific objection comes too late here for the first time. If separate pleas had been interposed below by the defendants respectively, our decision might have been different, but here, where there is but one defense, and the court can see that the issue has been disposed of upon the evidence, and that the jury may have used the word "defendant," as a noun of multitude to include all the parties defendant, we hold that the verdict by legal intendment is sufficient upon the issue and evidence in the case.

The objection to a verdict, that it found "the issue," instead of the "issues," was held to come too late, on error, for the first time. *Laber* v. *Cooper*, 7 Wall. 570. In *Henry* v. *Halsey*, 5 Smedes and Marshall, 573, it was held, that a verdict which found for "the plaintiff," instead of "the plaintiffs," was sufficient, where the record showed the jury were impaneled to try the issue.

There are two counts in the declaration. The verdict finds the plaintiff to be the owner in fee of the premises described in the declaration; judgment, that the plaintiff recover possession of the premises "according to the verdict of the jury" "as described in the declaration," "to wit," and then follows the description in the first count. Now appellant's counsel claim that the respective counts describe different parcels; we think they describe the same premises, but if we concede the contrary, inasmuch as the verdict covers the premises described in both counts, the plaintiff alone is prejudiced by a judgment for one parcel instead of two, and the appellant is not prejudiced thereby.

The objection to the patent, as evidence, raised in the court below, viz.: "there was no public act of the United States congress, as is referred to in said patent, and because the same is immaterial," as we shall show, are untenable, and because they are not raised on the argument, we regard them as waived. The objections urged on the argument, to the patent, were not raised below, but if raised there, might

have been obviated, and will not therefore be considered by us here.

The deed from the National Land and Improvement Company to appellee was objected to at the trial, on the ground that it "was not acknowledged as required by the laws of Colorado Territory."

The deed from appellee to appellant was objected to because the same was immaterial and that the condition could not be given in evidence.

It is urged on the argument, that the certificates of acknowledgment to the deeds respectively, show that the respective acknwoledgments were those of individuals filling corporate offices, and not of the corporations, and they were, therefore, without proof of acknowledgments by the respective grantors, not entitled to record, nor admissible in evidence. Attention was not called to this ground of objection at the trial; if it had been suggested then, it might have been removed by the production of the original deeds, and proof of the corporate seals and signatures of the officers of the grantors. It is well settled that the true ground of objection to the admissibility of material evidence offered, which might be obviated, must be suggested at the trial, or it cannot be considered afterward. The ground of objection to the admissibility of these deeds, urged before us — that they were not acknowledged by the grantors — that they were acknowledged by individuals, and not by the corporations — were not suggested to, nor passed upon by the court below, they cannot be made and considered now. *Cody* v. *Butterfield*, 1 Col. 384; *Consolidated G. Co.* v. *Raber*, id. 514; *McGraw* v. *Welch*, 2 id. 284.

The patent and the deeds referred to were proved by certified copies without any affidavit being made that the originals were out of the power of the plaintiff, and could not be produced. It is objected on the argument, that these copies were, therefore, improperly received in evidence. This objection was not taken below, ought not to be raised here, and we have no right to consider it.

The learned counsel for the defendant is mistaken in his statement that the deeds to the companies do not embrace the lands in dispute. It is claimed by the appellant that no corporation could be created for the purpose set forth in the certificate of incorporation, under the law, and that appellee had no existence, and could neither take nor convey the title to land. Under section 1 of the act of March 2, 1867 (14 U. S. Statutes at Large, page 426), the legislature of the Territory may, by general acts of incorporation, permit persons to associate themselves together as bodies corporate, for mining, manufacturing, and other industrial pursuits. Sections 1 and 2, chapter 18 (page 117), Rev. Stat. of Colorado, of 1868, authorizes three or more persons, for the purpose of carrying on any kind of manufacturing, mining, mechanical or chemical business ; construct wagon roads, railroads, telegraph lines, dig ditches, build flumes, run tunnels, or carry on any branch of business designed to aid in the industrial or productive interests of the country ; to make, sign and acknowledge certificates, complying with the provisions of the statute, and thereby become a body politic and corporate.

This act was amended February 11, 1870 (Laws of 1870, page 49), so as to authorize like numbers of persons to incorporate for the purpose of aiding, encouraging and inducing immigration to this Territory ; and to purchase, acquire, hold, possess, sell, convey and dispose of town lots and other property, whether real, personal or mixed. The congressional act of June 10, 1872 (17 U. S. Statutes at Large, page 390), declares that the act of March 2, 1867, referred to, "so far as relates to incorporations which have been, or which may hereafter be, created and organized for the business of mining, manufacturing, or other industrial pursuits ; on (or ?) the construction or operation of railroads, wagon roads, irrigating ditches, and the colonization and improvement of lands in connection therewith, or for colleges, seminaries, churches, libraries, or any charitable or scientific association, and for all rightful subjects of legislation, consist-

ent with the Constitution of the United States, under the
general incorporation laws of any Territory of the United
States, shall be construed as having authorized, and as
authorizing the legislative assemblies of the Territories of
the United States by general incorporation acts to permit
persons to associate together as bodies corporate" for the
purposes above named.

The learned counsel for the appellant have ignored in
their argument the Territorial act of February 11, 1870,
amending chapter 18 of the Revised Statutes, which is
important to be considered in this connection.

The incorporation of appellee, as expressed in the certifi-
cate under which it claims to have been incorporated, was
among other things for the purpose of aiding and encourag-
ing immigration to the Territory, and to purchase, acquire,
hold, possess, sell, convey and dispose of lands, town lots,
mineral springs and other property.

The Territorial Act of February 11, 1870, expressly au-
thorizes corporations to be formed for these purposes.

The appellee, then, is legally incorporated for these pur-
poses, unless the last-mentioned act is in contravention of
the Constitution or laws of the United States.

Section 6 of the Organic Act enacts that the legislative
power of the Territory shall extend to all rightful subjects
of legislation consistent with the Constitution, and the pro-
visions of the act.   Under this provision there is no doubt
that the legislature had power to provide for the creation of
bodies corporate for the purposes contemplated in the or-
ganization of the appellee.   The congressional act of March
2, 1867, expressly prohibited the grant of private charters
and especial privileges, but allowed general incorporation
acts by the Territorial legislature, authorizing bodies to in-
corporate for mining, manufacturing, and other industrial
pursuits.

It is not necessary for us to decide whether this statute
prohibited by implication the Territorial legislature from
passing general laws authorizing the formation of corpora-

tions for other than mining, manufacturing and other industrial pursuits under the maxim that the expression of one thing in a statute is the exclusion of another, nor whether the Territorial act of 1870 was in contravention of the congressional act of 1867.

The congressional act of June 10, 1872, has saved us this labor. That act declares, that the act of March 2, 1867, as far as it relates to incorporations which have been created for the purpose expressed in appellee's certificate, among others, under general incorporation laws of any Territory, shall be construed as having been authorized.

Before the passage of the act of 1872, appellee was a corporation *de facto*, created under the forms of law, for legitimate beneficial purposes, inuring to the benefit of the community, as well as to the benefit of the corporators ; it exercised the functions which it claimed, and whatever doubts may have hung over the legitimacy of its birth, have been removed by the act of 1872, and it is entitled to be treated as a corporation *de jure*, from the time of filing its certificate of incorporation, capable of taking and conveying the title of real estate.

This conclusion is arrived at upon authority.

In *Jameson v. The People*, 16 Ill. 258, it was held that where a municipal corporation has been recognized by acts of the general assembly, empowering it to act, by issuing negotiable obligations, all inquiry into the original organization is precluded.

In *McIntyre v. The Canal Company*, it was held that an act reciting that a corporation, trustee, had lost its right, and authorizing the purchase of its property for the State, recognized its existence and power to contract. 9 Ohio, 203.

In *The Black River and Utica Railroad Company* v. *Barnard*, 31 Barb., the company, while in the exercise of its corporate functions, had been recognized by act of the legislature as a corporation, and it was held that it became, by such recognition, *ipso facto*, a legal corporation.

It is claimed by the appellant's counsel, that the act of 1872 did not retroact so as to give legality to appellee prior to this act.

That act in its terms is retroactive: "shall be construed as having authorized," applied to the act of 1870, gives it effect from its inception, unless such effect is in contravention of the Constitution.

*Satterlee* v. *Mathewson* was in ejectment; the plaintiff claimed title derived from Connecticut, and the defendant under title derived from Pennsylvania. It appeared that the defendant had come into possession as tenant of the plaintiff. The court of common pleas decided in favor of the plaintiff, on the ground that the defendant was estopped, by reason of the tenancy, from setting up his title, although it was the oldest and best. Upon error, the supreme court of Pennsylvania decided that, by the law of that State, the relation of landlord and tenant could not subsist under a Connecticut title, and upon this ground reversed the judgment, and awarded a new trial. Before the retrial the legislature of Pennsylvania changed the law in this respect. The cause subsequently went to the supreme court of the United States, and it was there held that the statute which validated the void contract of tenancy, did not thereby impair the obligation of a contract — and that although retrospective in its action, it did not partake of the character of an *ex post facto* law forbidden by the Constitution. 2 Peters, 413. This doctrine was recognized in *State* v. *Squires*, 26 Iowa, 347.

The phrase, *ex post facto*, is held to apply to legislation respecting crimes. Sedgwick on Construction, etc., of Stat. and Con. Law, 165.

But the appellant here is not in position to question the existence of the appellee, collaterally in this action.

The Territorial legislature, by the act of 1870, had attempted to provide, by a general law, the mode by which individuals could associate and acquire corporate powers similar to those exercised and claimed by the appellee. The

language of the supreme court of the United States, in an analogous case, is applicable to this, with slight change of language. Conceding the bank (appellee) to be guilty of usurpation, it was still a body corporate *de facto*, exercising at least one of the functions which the legislature attempted to confer upon it, and in such case the party who makes a sale of real estate to it, or buys real estate of it, is not in a position to question its capacity. *Smith* v. *Sheeley*, 12 Wall. 361. Or we may adopt, the language of the supreme court of Illinois, and say : "Here then, is a body *de facto*, which had been engaged in an undertaking involving important interests. The regularity of its organization cannot be questioned collaterally. And alleged noncompliance with the law can only be inquired into by the writ of *quo warranto* or *scire facias*. Hence it is improper in this case to discuss the right of the grantee in the deed to take, or the power of the legislature to legalize the irregularities complained of." *Thompson* v. *Candor*, 60 Ill. 428.

It is contended by appellant's counsel that the patent, since it is in excess of quantity authorized, is void on its face. The patent purports to have been made according to the provisions of the act of congress of April 24, 1820, entitled, "An act making further provision for the sale of public lands," and in conformity with the several acts of congress in such case made and provided. Section 1 of the act of April 24, 1820, and other acts, under certain circumstances, authorized the sale of public lands in sections, halves, quarters and half sections. See U. S. R. S., ch. 7.

There is, therefore, nothing on the face of the patent tending to show that the quantity of the land conveyed by it, was in excess of the quantity authorized by law to be conveyed.

It is claimed that inasmuch as the patent grants the land to Charles B. Lamborn, *trustee*, without declaring the trust, the land was granted in trust for the grantor. It does not necessarily result that the grantor of the land in trust in this case is the beneficiary intended by the trust.

*Dillage* v. *Greenough*, 45 N. Y. 438.   Besides, Lamborn having conveyed the premises to the National Land and Improvement Company, in the absence of evidence to the contrary, we must presume that he properly conveyed in accordance with the trust, and not in violation of it.   There was no evidence of fraud given upon the trial.

The requests for the court to give instructions based upon the theory that there was such evidence were, therefore, properly refused.   The question of fact, whether Cowell had accepted the deed to him, and the condition, was fairly submitted to the jury.   If the jury had found in favor of appellant upon the question under the instruction, the verdict would have been in his favor, but they found against him.   This established the fact that he accepted the deed and the condition, and was bound by it.

Requests to instruct the jury, based upon the hypothesis of fact antecedent to the deed, were, therefore, properly refused.

The appellant's counsel contend that the condition in the deed to appellant was repugnant to the estate granted by the deed, and is therefore invalid.   A condition similar to that in appellant's deed was held not repugnant to the grant, and that the grantor might recover in ejectment upon proof of the breach, without previous entry, demand or notice. We assent to the doctrine and reasoning in *Plumb* v. *Tubs*, 41 N. Y. 442.   See, also, *Collins Manf. Co.* v. *Mercy*, 25 Conn. 242.

The exception to the instruction goes to the whole charge, and error cannot be maintained upon a part of it.   We see no error in the instructions.

*Judgment affirmed.*