[L. A. No. 2591. Department Two.—August 23, 1911.]

JOHN H. BERRYMAN, Appellant, v. HOTEL SAVOY COMPANY (a Corporation), Respondent.

DEED—COVENANT OF FIRST GRANTEE TO BUILD HOTEL—RESTRICTIONS AS TO POSITION—EASEMENT NOT CREATED—PERSONAL COVENANT.—A first deed of grant, bargain, and sale, having besides the usual covenants, an express affirmative covenant of the grantee to build a hotel on the land granted, within a specified time, and at a specified cost, to be located not less than seven feet from the front line, and eight feet from the northeast side line, and twelve feet from the southwest side line of the land, the intermediate spaces to be used for ornamental purposes, and in case of destruction by fire, to be rebuilt, not specifying restrictions as to the rebuilt hotel, and no reference being made in the deed to any other land, cannot be considered as creating an easement in favor of any subsequent grantee of adjoining land, but is to be construed as containing a personal covenant solely in favor of the grantors.

ID.—EFFECT OF RESTRICTION UPON SECOND GRANTEE OF ADJOINING PROPERTY—LOCATION OF FRONT LINE—OBLIGATIONS NOT RECIPROCAL OR ENFORCEABLE.—A restriction in a second deed of adjoining property against building less than seven feet from the front line, creates no reciprocal obligations between the first and the second grantees, in that respect, which are enforceable in equity in favor of such second grantee, or his successor in interest, against the first grantee of the hotel lot, or his successor in interest, either as covenants running with the land, or as personal covenants, with which a court of chancery will compel compliance, by persons taking their respective

parcels with due notice of mutual agreements. Personal covenants cannot have the same effect as covenants running with the land.

ID.—NO ENFORCEABLE EASEMENT—DOMINANT TENEMENT NOT CREATED.—There being no mention of adjoining property in the first deed, and nothing appearing therein to show that the grantors had any interest in any property other than that described therein, and no dominant tenement being described therein to which the restrictions therein might make the grantee's land a servient tenement, no enforceable easement is thereby created, in favor of the second grantee of adjoining land or his successor in interest.

ID.—ENFORCEABLE PERSONAL COVENANT.—A covenant not running with the land may be for the benefit of property owned by the grantors thereof, who may enforce it, but that does not take it out of the category of personal covenants, and make it sufficient to create an easement.

ID.—COVENANT "RUNNING WITH LAND CONVEYED"—RIGHTS OF PURCHASER FROM COVENANTOR—COVENANT NOT RUNNING WITH LAND OF GRANTORS.—Where the covenant to build the hotel as specified purports to run solely "with the land conveyed," and no ownership of other land of the grantors is stated in the deed, a subsequent purchaser of the land conveyed cannot be charged from the record with knowledge that the original grantors owned other land to be benefited by the covenant, and have the right to construe the covenant as imposing no servitude running with the land, but as imposing a mere personal burden on the land conveyed which will adhere exclusively to the original covenantor.

ID.—FEE CONVEYED TO COVENANTOR—WANT OF PRIORITY OF ESTATE TO PASS TO SECOND GRANTEE OF GRANTORS.—Where the fee is passed to the covenantor, and no reversion is left in the covenantee, there is no priority of estate or tenure between the parties, and the burden of the covenant in such case, though imposed on the land conveyed, is solely for the personal benefit of covenantee, and cannot pass with his land to any second grantee from himself.

ID.—COVENANTS FOR BENEFIT OF LAND CONVEYED.—It is only covenants for the benefit of the land conveyed, which are deemed incident to the land, and run therewith, and whoever, in such case, becomes the owner of the land, would be entitled to the benefit of such a covenant.

ID.—INJUNCTION SUIT BY SUCCESSOR OF SECOND GRANTEE AGAINST SUCCESSOR OF FIRST GRANTEE—CONSTRUCTION OF FINDINGS—BENEFIT OF TRACT—EASEMENT NOT CREATED.—In an injunction suit by a successor in interest of the second grantee against a successor in interest of the first grantee to restrain a change in the construction of the hotel, to his alleged injury, where the findings and judgment were for the defendant, it is held that a finding that the first covenant was intended for the benefit of the entire tract of land, must be read in its entirety as immediately following a finding that the parties did not intend to create an easement for the benefit of any

succeeding grantee, "or of any land whatever." Read as a whole the finding is not ambiguous.

ID.—SECOND BUILDING WITH LIGHT AND AIR ON TWELVE-FOOT SPACE—QUITCLAIM OF RESTRICTIONS—FINDING SUSTAINED.—Where the successor in interest of the second grantee, plaintiff in the injunction suit, owned a building fronting on the twelve-foot space of the hotel lot with windows for light and air, and sought to enjoin a breach of the restriction, which the court found had been effectively removed by a quitclaim deed for value to the hotel company by the original grantors, whereby it was permitted to build upon the twelve-foot space, such finding is sustained, and the judgment against the plaintiff is upheld.

ID.—OBJECTION THAT GRANTORS PROFITED BY THEIR WRONG—GRANTORS NOT PARTIES.—The objection that the grantors could not profit by their own wrong cannot be considered, as they are not parties to the action, nor seeking any relief.

ID.—CLEAR INTENTION OF ORIGINAL PARTIES NOT TO CREATE AN EASEMENT—RESTRICTION OF PERSONAL COVENANT REMOVED.—It is held, that it was the clear intention of the original parties not to create an easement of any kind for the benefit of any second grantee from the original grantors, and that the clear weight of authority sustains the finding and conclusion of the trial court that the covenant in question was a personal one in favor of the grantors, the restrictions of which they could and did remove.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Chas. Monroe, Judge.

The facts are stated in the opinion of the court.

Cryer & Tuttle, for Appellant.

Frank G. Finlayson, for Respondent.

MELVIN, J.—Plaintiff sought an injunction to restrain the defendant corporation from violating a certain building restriction contained in a deed from the common grantors of the predecessors in interest of both parties. Judgment was given in favor of defendant and we are called upon to consider appeals from said judgment and from an order denying plaintiff's motion for a new trial.

There is very little, if any, material difference between the parties respecting the facts of the case, the only serious subject of controversy being the proper interpretation of the

building restriction contained in the original deed, and the effect of a subsequent quitclaim deed whereby the original grantors sought to release the present defendant from any binding force of such restriction.

In July, 1901, Abbott Kinney and Matilda Dudley were the owners of the Bay View Tract in Santa Monica. Three lots and part of a fourth (all adjoining and forming one parcel) were sold to Abner L. Ross, defendant's predecessor in title. The deed of conveyance from Kinney and Dudley, parties of the first part, to Ross, contained in addition to the usual covenants in a deed of grant, bargain, and sale, the following: "It is provided and covenanted with a covenant running with the land herein conveyed that a building and improvements shall be erected upon these premises to be maintained as a first-class hotel, to cost not less than five thousand ($5000.00) dollars, and the main part thereof shall be located not less than seven (7) feet from the front line and eight (8) feet from the N. E. side line and twelve (12) feet from the S. W. side line of said lot, which spaces between buildings and side lines are to be maintained as flower gardens, and all front porches shall be kept open and unobstructed on the front and ends thereof; said hotel to be erected and opened within sixty (60) days from date hereof. . . . And, it is hereby covenanted that if the hotel should be removed from said grounds or should be destroyed by fire or other elements, that parties of the second part shall rebuild said hotel or make other improvements on said lots to the full value as heretofore agreed upon and on failure so to do within one year, the said party of the second part, his heirs or assigns, shall reconvey the said premises to the parties of the first part, their heirs or assigns, on payment of twelve hundred and fifty dollars."

The hotel was constructed in accordance with the covenant above quoted. In September, 1902, one Junipher purchased from Kinney and Dudley's grantees of her interest in Bay View Tract, property adjoining that previously conveyed to Ross. The deed to Junipher contained a restriction against placing any building nearer than seven feet to the front line of the property conveyed. By mesne conveyances the title to this property was vested in Mary A. Berryman in 1903. She erected a three-story building, one wall of which was on the line between her land and that of defendant. There are many

windows for the admission of light and air to this building
overlooking the twelve-foot space on defendant's property.
Mary A. Berryman on May 15, 1906, conveyed this last men-
tioned property to her husband, the plaintiff, who owned it at
the time when it is alleged defendant threatened to build on
the twelve-foot strip above mentioned in such a manner as to
shut off light and air from the windows on that side of the
building adjacent to defendant's land. In May, 1908, Kinney
and Dudley quitclaimed to the Hotel Savoy Company all of
the property previously conveyed by them to Ross, such con-
veyance being "given especially for the purpose of quitclaim-
ing and releasing the covenants and restrictions contained in
and provided by" their deed to Ross.

After a trial of the issues the court found that the covenant
providing for the maintenance of an open space next to the
land afterwards acquired by plaintiff was not inserted in the
deed for the benefit of "any particular property whatsoever";
that it was not the intention of any of the parties to the deed
to create an easement for the benefit of the land now owned by
plaintiff and that it "was the intention of the parties that said
covenant should be for the benefit of the entire tract of land,
of which the land in controversy was a part." The court also
found that the title did not pass to defendant subject to the
covenants contained in the deed to Ross; that such covenants
created a mere personal right in favor of Kinney and Dudley;
that this right was surrendered by the quitclaim deed; and
that the covenants in the deed to Ross did not run with the
land. It was also found that the wall of plaintiff's building
encroached slightly on defendant's land.

Appellant contends that the deed to Ross and that to Juni-
pher, each containing a restriction against building nearer the
front line of the property than seven feet, create reciprocal
obligations enforceable in equity, either as covenants that run
with the land or as personal covenants with which a court of
chancery will compel compliance by persons taking the re-
spective parcels with due notice of the mutual agreements.
We cannot accept this view of the law. As was said in *Los
Angeles Terminal Land Co. v. Southern Pacific R. R. Co.*, 136
Cal. 42, [68 Pac. 310]: "That there are personal covenants
enforceable in equity against the grantee of the covenantor, is
conceded; but that proposition is far from being applicable in

all cases, for, if it were, it would result that all purely personal covenants in any manner relating to land would have the same effect as those which do run with the land."

The covenant in the deed to Ross is affirmative. By it the covenantor agrees, *in the future,* to erect a building at a certain cost and in a certain manner. On the other hand, the deed to Junipher contains a negative covenant, a typical building restriction whereby the covenantor agrees to place no building nearer the front line of his property than seven feet. There is no mention of adjoining property in the deed to Ross. Indeed, there is nothing in that deed to show that Kinney and Dudley, the grantors of Ross, had any interest in any property other than that described in the said deed. In other words, no dominant tenement is described to which the restriction in the deed to Ross might make his land a servient tenement.

Appellant insists that judgment should have been entered upon the findings, because the court found that the parties intended the covenant in question to be "for the benefit of the entire tract of land of which the land in controversy was a part." Since the whole includes a part, we are asked to interpret this finding as giving to the plaintiff the right to enforce the covenant made for the benefit of his land which was included in the original Bay View Tract. The finding upon this matter, however, must be read in its entirety. That part of it which declares that Ross and his grantors intended the covenant to operate for the benefit of the whole tract of land immediately follows a finding that the parties did not intend to create an *easement* for the benefit of the land subsequently acquired by Berryman "or of any land whatever." Read as a whole the finding is neither ambiguous nor in opposition to respondent's theory of the case. A covenant not running with the land may be for the benefit of property owned by the persons who may enforce it, but that fact does not take it out of the category of personal covenants and make it an easement. Examining the words of the covenant itself we cannot see that it creates an easement running with plaintiff's land. It purports to be a covenant running with the "land conveyed" and there is nothing in the deed itself to show that the grantors owned another foot of land in that vicinity. Defendant, therefore, as a subsequent purchaser of the land, could not be charged with knowledge, derived from the record, that Kinney

and Dudley owned other property to be benefited and the evidence adduced at the trial showed no such knowledge.   He had the right to read the covenant in the deed to Ross, imposing as it did a burden on his property, as one creating no servitude that would pass with the land.   To that covenant the language of this court in *Los Angeles Terminal Land Co.* v. *Southern Pacific R. R. Co.,* 136 Cal. 42, [68 Pac. 310], is entirely applicable:   "It was not made for the benefit of the lot conveyed, but purported to impose a burden thereon by restricting its use; and while a benefit will pass with the land to which it is incident, a burden will adhere exclusively to the original covenantor, unless a privity of estate or tenure subsist or be created between the covenantor and covenantee at the time when the covenant is made.   (*Webb* v. *Russel,* 3 Term Rep. 393, 402; *Hurd* v. *Curtis.* 19 Pick. (Mass.) 459; *Bally* v. *Wells,* 3 Wils. 25, 29.)   Here there was no privity of estate between the parties, for by the same instrument which contained the covenant the fee was conveyed to the covenantor.   Under the feudal system the transfer of every estate created privity of tenure betwen the parties, and hence both the burden and the benefit of all covenants made by either bound and profited the assignee of either as an incident to the land.   'But when the statute of *quia emptores* abolished subinfeudation this privity no longer existed in cases where a fee was transferred and no reversion was left in the donor, and it became a rule that covenants which imposed any charge, burden, or obligation upon the land were held not to be incident to it, and therefore incapable of passing with it to an assignee. . . . But, on the other hand, if the covenant were one intended to *benefit* the land, it was considered to be incident to and run with the land, and, therefore, whoever might become the owner of the land, would also become entitled to the benefit of the covenant.' (Rawle on Covenants for Title, p. 314.)   So our Civil Code (sec. 1462) provides:   'Every covenant contained in a grant of an estate in real property, which is made for the *direct benefit* of the property, or some part of it then in existence, runs with the land'; and section 1461 of the Civil Code provides that 'the only covenants which run with the land are those specified in this title, and those which are incidental thereto'."

Appellant says that the judgment enables Kinney and Dud-

ley to profit by their own wrong; that after selling their property at high prices because of the improvements on the lots now owned by respondent, they quitclaim for a consideration to the Hotel Company that restriction upon which appellant had depended as insuring the free admission of light and air to one side of his building. But they are not parties to this action nor are they seeking equitable relief. Respondent in purchasing the land in question had a right to depend upon the *title* as conveyed to his predecessors and to him. In the deed to Ross he found a provision which possessed all of the characteristics of a personal covenant. The deed provided that in the event of the destruction of the hotel by fire it must be rebuilt or improvements on the land must be made "to the full value as heretofore agreed upon" or otherwise the vendors or their assigns might repurchase at a stipulated price. There was no provision that the building restriction should apply to such new structure or improvements. True, as appellant says, this contingency never arose, but nevertheless the provision with reference to rebuilding in case of fire is very illuminating. It indicates that the parties did not intend the building restriction theretofore expressed in the deed to be perpetual and to pass as an easement, for if such had been their intention there would have been some effort to require the reconstruction of the building, in case of fire, upon the same lines and for the same uses as the original structure. The intention of the parties should be "determined by a fair interpretation of the grant or reserve creating the easement." (*Peck* v. *Conway*, 119 Mass. 549.) As was said in *Clapp* v. *Wilder*, 176 Mass, 341, [57 N. E. 695, 50 L. R. A. 120] : "It seems to us that in all these cases it is better to get at the intention of the grantor from the language of the deed, interpreted in the light of the attending circumstances, than to conjecture the intent from the circumstances, and then to make the language of the deed bend to that."

Authority is not lacking to support the interpretation given by the trial court to the deed which was the basis of this action. In *Badger* v. *Boardman*, 16 Gray, (Mass.) 559, the facts were as follows: One Downing, the owner of a tract of land, conveyed to the defendant a certain lot, "subject to the following restriction; that no outbuildings or shed shall ever be erected westerly of the main building of a greater height than those

now standing thereon." Downing subsequently conveyed the adjoining lot to another person and plaintiff through various mesne conveyances acquired title to it. The bill whereby the plaintiff sought to enforce the restriction in the deed was dismissed and in upholding this course the supreme court of Massachusetts said: "The infirmity of the plaintiff's case is that there is nothing from which the court can infer that the restriction in the deed from Downing to Boardman was inserted for the benefit of the estate now owned by the plaintiff. If it appeared that the parties to that conveyance intended to create or reserve a right in the nature of a servitude or easement in the estate granted, which should be attached to and be deemed an appurtenance of the whole of the remaining parcel belonging to the grantor, of which the plaintiff's land forms a part, then it is clear, on the principles declared in the recent decision of *Whitney* v. *Union Railway*, 11 Gray, (Mass.) 359, [71 Am. Dec. 715], that the plaintiff would be entitled to insist on its enjoyment, and to enforce his rights by a remedy in equity. But there is an entire absence of any language in the deeds under which the parties claim, from which it can be fairly inferred that the restriction in the deed to the defendant against erecting his building above a certain height was intended to enure to the benefit of the estate now owned by the plaintiff. The restriction is in the most general terms, and no words are used which indicate the object of the grantor in inserting it in the deed. Nor is there any language in the deeds under which the plaintiff claims title, which refers specifically to this restriction, or from which any intent is shown to annex the benefit of this particular restriction to the plaintiff's estate. Generally, when such a right or privilege is reserved, the purpose intended to be accomplished by it is stated in the conveyance or can be gathered from a plan referred to therein, or from the situation of the property with reference to other land of the grantor. All parties then take with notice of the right reserved and the burden or easement imposed. But the conveyances in the present case contain no such clause, nor is there anything in the terms of the grant, or in the circumstances surrounding the parties when it was made, to lead to an inference in favor of the claim set up by the plaintiff. For aught that appears, it might have been intended by the parties for the benefit of the grantor only so long as he remained the

owner of any of the land of which that conveyed to the plaintiff originally formed a part. However this may be, it is certain that the defendant took his grant without any notice, either express or constructive, that this restriction was intended for the benefit of the plaintiff's estate. This is the material distinction between the case at bar and that of *Whitney* v. *Union Railway*, above cited. And it is vital to the rights of the parties, because, as the case stands, the plaintiff is not entitled to avail himself of the equitable principle, that the defendant has taken his estate with notice of a stipulation for the benefit of the estate now owned by the plaintiff, which in equity by accepting the grant the defendant would be bound to observe. We are therefore of opinion that the clause in the deed to the defendant, creating the restriction on the enjoyment of his estate, must be construed as a personal covenant merely with the original grantor, which the plaintiff cannot ask to have enforced in this suit."

*Jewell* v. *Lee*, 14 Allen, (Mass.) 145, [92 Am. Dec. 744], has many features resembling the case at bar. One Bates, who was the owner of land lying on both sides of Orient Street, Swampscott, conveyed a portion on the southerly side, bordering upon the ocean "upon condition that the granted premises shall be used for no other purpose or purposes than those for which they are now used,—namely, for bathing and boating upon the beach, excepting only that low bathing-houses may be built thereon; it being understood and agreed that the grantee, his heirs or assigns, may ornament the granted premises in such manner as shall not be inconsistent with the foregoing condition." Subsequently Stephen Wardwell released his interest to Eben and the latter conveyed the westerly part thereof to plaintiff subject to the condition expressed in the deed from Bates. In the following year Wardwell conveyed to Gray the lot adjoining plaintiff's property on the east, subject also to the aforementioned condition, and Gray quitclaimed to defendant. The property on the north side of Orient Street was also conveyed by Bates to the Wardwells and through mesne conveyances Jewell and Lee obtained title to lots immediately opposite their respective holdings on the south side of the street. Defendant with full knowledge of the restrictions in the deed from Bates to Wardwell prepared in violation thereof to move a house on to his lot. Plaintiff sued to enjoin him from so

doing, After the suit was instituted defendant procured and caused to be recorded instruments releasing all the owners of land on the south side of the street from the condition in the deed to the Wardwells. Plaintiff's bill was dismissed, the court saying, among other things: "So far as we are able to see, there is nothing to indicate that the original grantor of the premises, in annexing the condition, had any intent to regulate or control the possession or enjoyment of the premises for the benefit of subsequent owners or grantees of the estate, or any part of it, but that it was imposed by him solely for his own private and personal benefit, as the owner of other lots in the vicinity, in which the present plaintiff has no interest whatever."

*Sharp* v. *Ropes,* 110 Mass. 381, was a case in which the owner of a tract of land subdivided it into lots for sale. Two adjoining parcels were sold subject for the term of fifteen years to certain restrictions, one of which was that no building should be erected within twenty feet of the street. Plaintiff and defendant were subsequnt grantees and the former sought to enjoin the latter from building within twenty feet of the street. In discussing the bill the court used the following language:

"It is not claimed that, in regard to any of the lots, there was any written covenant by the grantor, and it does not appear that there was any express stipulation or direct assurance on his part, that any person who should purchase a lot on the north side of that street should have the benefit of a restriction binding all the other purchasers to leave an open space between their dwelling-houses and the street. The only ground upon which the plaintiff can rest her claim that the restriction in question was intended to operate for the benefit of all the purchasers, and to establish a general plan of building, by which each one would acquire a right in the nature of an easement in the land purchased by the others, is to be found in the fact, that in his transactions with two separate and independent purchasers, the grantor conveyed a portion of the land in each case, subject to the terms and conditions set forth in the bill of complaint. . . . It is undoubtedly true, and has often been decided, that where a tract of land is subdivided into lots, and those lots are conveyed to separate purchasers, subject to conditions that are of a nature to operate as inducements to the purchase, and to give to each purchaser the benefit of a general

plan of building or occupation, so that each shall have attached to his own lot a right in the nature of an easement or incorporeal hereditament in the lots of the others, a right is thereby acquired by each grantee which he may enforce against any other grantee. (*Whitney* v. *Union Railway Co.,* 11 Gray, 359, [71 Am. Dec. 715]; *Parker* v. *Nightingale,* 6 Allen, 341, [83 Am. Dec. 632]; *Linzee* v. *Mixer,* 101 Mass. 512; *Tulk* v. *Moxhay,* 2 Phil. Ch. 774.) But in the case at bar there is nothing from which the court can infer that the restriction contained in the deed from Heath to the defendant was intended for the benefit of the estate now owned by the plaintiff. No such purpose can be gathered from the plan, or from the situation of the property with reference to other land of the grantor. It purports to be a condition imposed by the grantor, and the deed points out the mode in which he, his heirs or devisees may enforce it. Neither of the deeds, under which these parties respectively claim, purports to give the grantee any such right against any other grantee. For aught that appears, the condition may have been intended for the benefit of the grantor or his family, as long as they continued to own the dwelling-house. The burden of proof is upon the plaintiff, if she insists upon giving to that condition any wider application, and this burden we do not find that she has sustained."

Of a similar restriction the same court said, in *Skinner* v. *Shepard,* 130 Mass. 181: "Undoubtedly Willis Bucknam might have enforced the first restriction while he lived; but there is nothing in the deed which shows that the parties intended that the restriction as to building within twenty-five feet of Green Street should create a servitude or easement in the granted land, which should attach to and be an appurtenance to any neighboring land. The mere fact which the plaintiffs offered to prove, that Willis Bucknam, at the time when he conveyed to Munroe and others, was the owner of land separated from the estate granted by the Woburn Branch Railroad, is not sufficient to show that the object of the restriction was to benefit this land. In the absence of any words in the deed to this effect, or any reference to a plan showing a general scheme of improvement, the grantees took their estate without any notice, express or constructive, that the restriction was intended for the benefit of the adjoining estate. For anything that appears, it may have been intended only for the benefit

of the grantor and for his personal convenience. (*Jeffries* v. *Jeffries,* 117 Mass. 184; *Jewell* v. *Lee,* 14 Allen, 145, [92 Am. Dec. 744] ; *Badger* v. *Boardman,* 16 Gray, 559.) We are therefore of opinion, that the restriction as to building must be construed, not as a condition which the heirs of the grantor can enforce, but as a personal covenant merely with the grantor; and that, after his death, it created no encumbrance or servitude upon the estate for which the plaintiffs can maintain this action." See, also, *Lowell Institution for Savings* v. *City of Lowell,* 153 Mass. 530, [27 N. E. 518], which holds that the burden of proof is on the plaintiff to show from the terms of the grant or from the situation and circumstances that the grantor intended to create a servitude enuring to the land itself. (*Beals* v. *Case,* 138 Mass. 138; *Clapp* v. *Wilder,* 176 Mass. 341, [57 N. E. 695, 50 L. R. A. 120] ; *Krekeler* v. *Aulbach,* 51 App. Div. 591, [64 N. Y. Supp. 908].)

The case of *Judd* v. *Robinson,* 41 Colo. 222, [124 Am. St. Rep. 128, 92 Pac. 724], was one in which an owner of property in Colorado Springs sought to enforce a condition against the sale of intoxicating liquors contained in an original deed to defendant's grantor. Plaintiff had secured his title by mesne conveyances from the same original source. The deed provided that no intoxicating liquor should ever be sold or disposed of at a place of public resort on the premises thereby granted and the supreme court held that the condition was valid and enforceable as between the grantor and its grantees (citing *Cowell* v. *Colo. Springs Co.,* 3 Colo. 82, and *Cowell* v. *Springs Co.,* 100 U. S. 55, [25 L. Ed. 547), but that it by no means followed that any owner of a lot in Colorado Springs might enforce the clause against any other lot owner. In pointing out the distinction between a personal covenant and one inuring to the benefit of neighboring land, the court said: "*De Gray* v. *Monmouth Beach Club House,* 50 N. J. Eq. 329, [24 Atl. 388], is one of the numerous authorities relied upon by appellants to sustain their right to maintain this action. The covenant in the deed in this action was: 'And the said party of the second part, for himself, his heirs and assigns, doth hereby covenant to and with the said Daniel Dodd and Francis Mackin, their heirs, executors and administrators, that he, the said party of the second part, his heirs or assigns, will not at any time hereafter erect or permit upon any part

of the said lot any hotel, drinking saloon, gaming house, slaughter house, furnace, manufactory, brewery, distillery, or building for the curing of fish, or for any other uses or purposes *that shall depreciate the value of the neighboring property for dwelling-houses.'*   The opinion reviews the English and American authorities upon the subject here under discussion and sums up the conclusions of the court as follows, at page 340 of 50 N. J. Eq., [24 Atl. 392] : 'The law, deducible from these principles and the authorities applicable to this case, is, that where there is a general scheme or plan, adopted and made public by the owner of a tract, for the development and improvement of the property, by which it is divided into streets, avenues, and lots, and contemplating a restriction as to the uses to which buildings or lots may be put, to be secured by a covenant embodying the restriction, to be inserted in each deed to a purchaser; and it appears, by writings or by the circumstances, that such covenants are intended for the benefit of all the lands, and that each purchaser is to be subject to and to have the benefit thereof; and the covenants are actually inserted in all deeds for lots sold in pursuance of the plan; one purchaser and his assigns may enforce the covenant against any other purchaser and his assigns, if he has bought with knowledge of the scheme, and the covenant has been part of the subject-matter of his purchase.'   It affirmatively appears from the amended complaint that appellants were not parties to the original covenant contained in the deed under which appellee Robinson derives title to her property.   In such cases it is held, that an action is not maintainable (1) in which it does not appear that the covenant was entered into for the benefit of the land of which plaintiff has become the owner, and (2) in which it appears that the covenant has not entered into the consideration of plaintiff's purchase.   From the very nature of the case, a covenant restricting the use of land will not be enforced against a subsequent purchaser without notice, actual or constructive, of the covenant. . . . By its terms the covenant is limited to the land 'hereby granted.'   In this respect it differs widely from covenants which in express terms or by reasonable or necessary implication, give notice that they are intended for the development or improvement of premises within a designated area, or for adjacent lots or neighboring property, as was the case in the New Jersey case,

above cited, as indicated by that portion of the covenant which we have italicized."

Without further citation we may say that we think the great weight of authority is in favor of the conclusion reached by the trial court that the covenant in question was a personal one, not running with the land and not capable of enforcement by the owner of adjoining property who was a subsequent grantee deriving title from the grantors in the deed to Ross.

We have examined the authorities cited by appellant and find that they are all readily distinguishable in their facts from the case at bar. We have already shown how one of these, *De Gray* v. *Monmouth Beach Company*, has been analyzed by the supreme court of Colorado and found not applicable to a case like this. *Peck* v. *Conway*, 119 Mass. 546, and *Clark* v. *Martin*, 49 Pa. St. 289, were cases in each of which the covenant was made in favor of the owner of adjoining property occupied as a homestead at the time the covenant was made. In each case the immediately adjacent property was the only land possessed by the grantor, while in the case at bar the original grantors owned many lots in Bay View Tract and elsewhere in Santa Monica, any one of which might have been benefited in some degree by the restriction set forth in the deed. In each of the cases last cited the grantor, who was the covenantee, owned but one lot of land in the vicinity of that taken by the grantee, who was the covenantor, and in each case the covenantee's land not only adjoined that of the covenantor but was occupied by him at the time of the execution of the deed as a homestead. *Coudert* v. *Sayre*, 46 N. J. Eq. 386, [19 Atl. 190], is not in point as the deed itself by its terms provided that the covenant should be for the benefit of the land retained by the grantor. The court said: "The covenant, it will be remembered, expressly declares that it shall be lawful for any person who shall become the owner of any of the land described in the ten deeds recited in the conveyance to the complainant, to maintain an action for a violation of the covenant against such person as may be the owner of the complainant's land when the violation is committed. The language of the covenant makes it certain, beyond all doubt, that the parties mutually intended that the restrictions put upon the land conveyed should have the effect to confer an important benefit on the grantor's adjacent land." In

*Hills* v. *Miller*, 3 Paige, 254, [24 Am. Dec. 218], the covenant was one by the grantor for the direct benefit of the land and the plaintiff bought directly from the covenantee, the covenant itself operating as an inducement for him to make the purchase. *Muzzarelli* v. *Hulshizer et al.*, 163 Pa. St. 643, [30 Atl. 291], was a case in which from the language of the grant itself it was evident that the common grantor intended the restrictions to apply to all of the lots granted. In *Whitney* v. *Union Railway Co.*, 11 Gray, 359, [71 Am. Dec. 715], and in *Parker* v. *Nightingale et al.*, 6 Allen, 341, [83 Am. Dec. 632], the very language of the instruments creating the covenants showed that they were for the benefit of all of the grantor's lots and that the restrictions might be enforced by subsequent owners. *Hemsley* v. *Marlborough House Co.*, 68 N. J. Eq. 596, [61 Atl. 455], was like *Clark* v. *Martin*, 49 Pa. St. 289, and *Peck* v. *Conway*, 119 Mass. 549, a case in which the owner of a homestead granted certain property with a building restriction obviously for the benefit of her property reserving to herself and heirs the right to consent to a different plan of building.

Owing to the conclusion which we have reached with reference to the covenant which we have been discussing it will be unnecessary to examine respondent's point that appellant is a trespasser upon its property, having built slightly over its line as found by the court, and that as such trespasser appellant has no standing in a court of equity without first doing equity himself.

There are no other points that require special notice.

The judgment and order are affirmed.

Lorigan, J., and Henshaw, J., concurred.