[Civ. No. 455. Fourth Appellate District.—August 28, 1931.]

MAX HEIMBURGE, Appellant, v. STATE GUARANTY CORPORATION (a Corporation) et al., Respondents.

Frank H. Heskett for Appellant.

John H. McCorkle and Orrick, Palmer & Dahlquist for Respondents.

MARKS, J.—Appellant instituted this action seeking to abate an alleged nuisance and to recover damages alleged to have been occasioned thereby. At the close of appellant's case respondents made a motion for nonsuit which was granted. From the judgment entered, appellant has prosecuted this appeal.

This action grew out of a controversy over the construction to be placed upon certain provisions of a deed executed on November 18, 1898, between Alice Bennett Coffin, now Alice Bennett Gilmore, the grantor, and Frank P. Frary, grantee. The provisions of this deed which are in dispute are as follows: "It is also agreed that the grantee herein shall in the event of his building on said property leave a light well between the building constructed and the Lafayette block; the said light well to be four feet wide and to extend from the north side of the second window on the north wall to the south wall of said Lafayette block; and extending upward from the bottom of the second story windows in said Layafette block. It is further understood that this agreement shall be in effect only so long as the grantor

herein named shall retain the ownership of said Lafayette block, and this covenant shall not pass to the grantee or to successors in interest thereof. To have and to hold the above-granted and described premises unto said grantee his heirs and assigns forever.''

Mrs. Gilmore originally owned lots ''A'' and ''B'' in block 46 of Horton's Addition in San Diego.. She sold the westerly portion of this tract (now owned by respondents) to Frary, retaining title to the easterly portion, which she still owns subject to a ninety-nine year lease. When she acquired title to these lots there was a four-story brick building upon that portion which she still owns and upon which appellant holds the ninety-nine year lease. The first floor of this building is occupied by stores, and the three upper floors are used as a hotel. There are outside windows in the westerly wall of this building on all three floors of the hotel. Appellant's interest in this property is deraigned through his lease.

On November 21, 1898, Frary sold his portion of the property to P. M. Johnson and J. E. Connell who built a two-story building upon it. This was probably erected some time prior to the year 1904 and remained thereon until the year 1929. The front portion of this two-story building was built flush to their easterly property line for a distance of twenty-one feet thereby closing certain of the windows on the second floor of the westerly side of Mrs. Gilmore's hotel building. The buildings remained in this condition until the year 1929, when the two-story building was removed and a four-story building erected in its place by the State Guaranty Corporation. The easterly wall of this new building followed the same line as that of the two-story building erected by Johnson and Connell. Its northerly twenty-one feet, which is the front end of the building, was built flush to the property line closing the windows for that distance on the westerly side of the Gilmore hotel property. A light well four feet in width was left along the balance of the westerly wall of the hotel making an offset of four feet in the easterly wall of respondents' building corresponding with the light well left in the easterly wall of the Johnson-Connell building.

Appellant maintains that the erection of the northerly twenty-one feet of the easterly wall of the four-story build-

ing flush against the hotel property thereby closing the outside windows on the two upper stories was a violation of the provisions of the deed from Coffin (now Gilmore) to Frary, which we have quoted; and further, that these provisions constitute a covenant running with the land whereby an easement was created with the Gilmore property as the dominant tenement and respondents' property as the servient tenement, which easement would prevent respondents from closing one vertical tier of the windows by the erection of its present building.

The sole question presented by the record before us is whether or not the provision of the deed from Coffin (now Gilmore) to Frary did create an easement which would pass with the title to the property or was a personal restriction or covenant between the parties to the deed.

The record shows that by the terms of the deed Frary agreed to leave a light well on his property *"in the event of his building on said property"*. This deed also contained a pertinent provision that the agreement requiring Frary to construct this light well would remain in force only as long as Miss Coffin (now Gilmore) should retain ownership of the hotel property and that it should not pass to her grantees or successors in interest. It would seem to be immediately apparent from the language used by the parties to this deed that they intended to bind only themselves and not their successors in interest and that the provisions which we have quoted created merely a personal contract between them and not an easement or covenant that would attach to the property and pass to subsequent owners thereof. The following cases make this conclusion irresistible: *Los Angeles Terminal Land Co.* v. *Muir et al.*, 136 Cal. 36; *Berryman* v. *Hotel Savoy Co.*, 160 Cal. 559 [37 L. R. A. (N. S.) 5, 117 Pac. 677]; *Bresee* v. *Dunn*, 178 Cal. 96 [172 Pac. 387]; *Pythian Castle Assn.* v. *Daroux*, 172 Cal. 510 [157 Pac. 594].

No privity of estate or contract exists between appellant and respondents. In the case of *Los Angeles etc. Co.* v. *Muir et al.*, supra, the plaintiff conveyed certain properties to the Catalina Yacht Club. The deed contained a provision as follows: "It is hereby covenanted and agreed by and between the parties hereto, that, in consideration of this conveyance, no saloon business or business of vending

malt, vinous, or spiritous liquors, shall ever be carried on upon said lot, neither shall said lot be used for any business or store purposes other than for hotel or lodging house.'' In deciding the case the Supreme Court used the following language: ''The covenant inserted in the deed from the plaintiff to the Catalina Yacht Club for the lot mentioned therein is not one that runs with the land. It was not made for the benefit of the lot conveyed, but purported to impose a burden thereon by restricting its use; and while a benefit will pass with the land to which it is incident, a burden will adhere exclusively to the original covenantor, unless a privity of estate or tenure subsist or be created between the covenantor and covenantee at the time when the covenant is made. (Citing cases.) Here there was no privity of estate between the parties, for by the same instrument which contained the covenant the fee was conveyed to the covenantor. Under the feudal system the transfer of every estate created privity of tenure between the parties, and hence both the burden and the benefit of all covenants made by either bound and profited the assignee of either as an incident to the land. 'But when the statute of *quia emptores* abolished subinfeudation this privity no longer existed in cases where a fee was transferred and no reversion was left in the donor, and it became a rule that covenants which imposed any charge, burden, or obligation upon the land were held not to be incident to it, and therefore incapable of passing with it to an assignee. . . . But, on the other hand, if the covenant were one intended to *benefit* the land, it was considered to be incident to and run with the land, and, therefore, whoever might become the owner of the land would also become entitled to the benefit of the covenant.' (Rawle on Covenants for Title, p. 314.) So our Civil Code (sec. 1462) provides: 'Every covenant contained in a grant of an estate in real property, which is made for the *direct benefit* of the property, or some part of it then in existence, runs with the land'; and section 1461 of the Civil Code provides that 'the only covenants which run with the land are those specified in this title, and those which are incidental thereto'. The covenant here in question is one which not only does not, as a matter of law, run with the land, but it purports on its face to be a personal covenant, not binding upon the assigns of the

covenantor, nor inuring to the benefit of the successors or assigns of the covenantee, and it is quite clear that no action at law upon the covenant in question could be maintained by the plaintiff against the defendants, or either of them."

■ Ordinarily, personal restrictions or covenants created by deed or contract do not pass with the land where there is no privity of estate or privity of contract. In the case of *Pythian Castle Assn.* v. *Daroux, supra,* the Supreme Court held as follows: "The facts are simple and undisputed. M. Graf was the owner of lot 5 in the block bounded by H, Eighth, I, and Ninth Streets, in the City of Sacramento. He conveyed by deed on April 21, 1888, the south ninety feet of the east forty feet of his lot to Knights of Pythias hall association of Sacramento, plaintiff's predecessor in interest. The deed in which the grantor was designated as 'party of the first part' and the grantee as 'party of the second part' contained the following language: 'And said party of the first part hereby covenants and agrees and this deed is given and accepted upon the express understanding and agreement that he will never himself erect any structure upon the South Ninety feet of the West Forty Feet of said Lot Five within five feet of the land hereby conveyed and that in case he has any *bona fide* offer to purchase of him said South Ninety feet of the West Forty feet of said Lot Five he will give said second party the preference to purchase the same at said *bona fide* offer.' Defendants by mesne conveyances and after the death of M. Graf became the owners of the south ninety feet of the west forty feet of said lot 5 and they served upon plaintiff notice of their intention to excavate and build thereon. Appellant thereupon commenced this action to enjoin them from placing any structure on the easterly five feet of their lot. The only question involved in the case, therefore, relates to the meaning and force of the quoted language. There is no ambiguity in the words of the deed. The paragraph upon which appellant relies is a purely personal covenant which does not purport to bind anyone but the grantor, M. Graf. It does not run with the land and does not place any sort of compulsion upon the present owners. By it M. Graf merely agreed to forbear from building any structure upon the easterly five feet of his remaining portion

of lot 5 during his ownership, and to give a preference to his grantee of the south ninety feet of the east forty feet to purchase the adjoining land in the event of a *bona fide* offer being made therefor by some intending purchaser. By no twisting or turning of the quoted language may any other meaning be derived from it. There is abundant authority to support the view of the trial court that the covenant pleaded is merely a personal one and not enforceable against respondents.''

In some cases, where justice and equity require it to be done, the courts have held that an equitable easement which runs with the land might be created by a personal restriction or covenant made between the owners of properties. This doctrine of equitable easements is set forth in the case of *Los Angeles etc. Co.* v. *Muir et al., supra,* as follows: ''Conceding, therefore, that personal covenants imposing restrictions upon the uses of land contained in grants thereof may, in proper cases, be enforced in equity, the question remains whether the facts of this case justify the relief granted by the court below. The plaintiff is the grantor in whose deed to the yacht club the covenants in question were inserted. As grantor it could determine the conditions or restrictions under which it would part with the title and the covenants it would require of the vendee. It could have inserted a condition subsequent, the violation of which would involve a forfeiture of title, and such condition would have been effective against the assigns of the grantee, or it could have inserted a covenant which would have inured to the protection of plaintiff's grantee, or successor in interest, and would have expressly bound the assigns of the yacht club. It did not do either, but contented itself with a covenant, in its terms purely personal, purporting to create a restriction upon the use of the property so long only as the vendee should retain the title, and by such agreement they would, at law, each be conclusively bound; and in determining any alleged equity arising out of this covenant, or agreement, or its alleged violation, its legal effect must not be lost sight of; for where a covenantor limits, by its terms, the legal duration of his covenant, there must be a clear and convincing equity to justify its continuance beyond the time so limited. It cannot be assumed that it was intended by either party to the covenant that it should be continued for all time, or

'until the island should be swallowed by the sea'. The covenant was not that the yacht club *would* use it 'for hotel, lodging-house, or club purposes', for any time or at all; and even if such had been the form of the covenant, surrounding conditions might so change that a court of equity would relieve the covenantor and the property from such restriction to its use, since public policy requires that land should not be unnecessarily burdened with permanent or long-continued restrictions, depreciating the value of its use to the owner, as well as its selling value in the market; and as there is no personal contract relation between the parties to this action, the plaintiff is not entitled to relief against the defendants, unless the evidence shows with reasonable certainty that the *use* of the lot for *ferry purposes* would materially injure the remaining property of the plaintiff.''

We cannot apply the doctrine of an equitable easement to this case. It affirmatively appears from the language used by Coffin and Frary in their deed that the covenant or restriction therein contained was personal to the parties and was not intended by them to run with the land. Appellant must rely upon this language and his rights are limited by it. To hold that the provisions of this deed created an equitable easement, it would be necessary for us to read into it an intention that is not only not apparent therefrom but is contrary to the express language used. We would have to impose a burden upon the subsequent owners of the Frary property which was neither contemplated nor desired by Frary or his grantor.

The apparent interpretation put upon the provisions of this deed by the conduct of Mrs. Gilmore and the subsequent owners of the Frary property furnishes a powerful argument against the contentions of appellant and in favor of the position assumed by respondents and the construction placed upon it by the trial court. The easterly wall of the two-story building erected upon respondents' property by Johnson and Connell was on the identical line now occupied by the easterly wall of the present building. The former building closed the windows of the second floor in the north end of the westerly wall of the Gilmore building. This old building remained upon the property closing these windows for a period of twenty-five years without active opposition or question from Mrs. Gilmore. Her acquiescence in this

condition for this period of time is evidence of the construction put upon the language used in the deed and is a strong argument in favor of the conclusion that the closing of these windows was not considered by her a violation of the terms of her deed to Frary. If the closing of these windows on the second floor of the building was not a violation of the terms of the deed, then the closing of the corresponding windows on the third and fourth floors was not a violation of its terms. Under these conditions and the other circumstances surrounding this case we cannot apply the doctrine of an equitable easement to the situation here presented.

Judgment affirmed.

Barnard, P. J., and Finney, J., *pro tem.*, concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on September 24, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 26, 1931.