341 P.2d 467 (1959)
Frank FARNIK, Plaintiff in Error,
v.
BOARD OF COUNTY COMMISSIONERS OF The COUNTY OF WELD, Colorado, Amerada Petroleum Corporation, and The Durland Trust Company, Defendants in Error.
No. 18593.
Supreme Court of Colorado, En Banc.
June 22, 1959.
As Modified on Denial of Rehearing July 13, 1959.
*469 Haffke & Johnson, Fort Morgan, for plaintiff in error.
J. Fred Schneider, Denver, amicus curiae.
Robert G. Smith, Greeley, for defendant in error, Board of County Commissioners of County of Weld.
HALL, Justice.
The parties appear here in the same order they appeared in the trial court, and we refer to them as plaintiff and defendants or by name.
Prior to December 1936, the defendant, Durland Trust Company, was the owner of E½, Sec. 35, Twp. 7 North, Range 59 West of the 6th p. m., Weld County, Colorado. Taxes levied for the year 1935 against said property being unpaid, the County Treasurer of Weld County, on December 14, 1936, caused said property to be sold for nonpayment of taxes. The tax sale certificate was issued to Weld County, as provided by law, and thereafter on November 15, 1940, a treasurer's deed to said land was issued to Weld County. The validity of the proceedings leading up to the issuance of this deed and the validity of the deed itself are not in question. Weld County, on December 10, 1942, more than two years after receiving the treasurer's deed, through court decree quieted its title to said lands. On November 22, 1943, twenty days short of one year after the decree quieting the title had been entered, the county offered at public sale the above tract and 166 other tracts, title to all of which had been acquired through treasurer's deeds issued on account of nonpayment of taxes. Offers of sale expressly provided that the county would reserve all minerals. Farnik purchased said E½, Sec. 35, and paid therefor the sum of $800. The deed issued to him on December 9, 1943, by Weld County expressly provided:
"* * * Weld County * * * does grant, bargain and sell the following described real estate, to-wit:
E½: Section 35, Township 7 North, Range 59 West of the 6th P.M.
except reservations in favor of the Union Pacific Railroad Company and except reservations in the United States patent and reserving existing reservoir sites and existing rights of way for roads and irrigation ditches and subject to existing leases; and reserving therefrom, to grantor, the oil, gas or other minerals therein." (Emphasis supplied.)
Farnik was well aware of the terms of sale and the reservations set forth in the deed. All deeds issued by Weld County had this same reservation.
On July 26, 1949, Weld County entered into an oil and gas lease with one Babcock, covering said E½ Sec. 35, (together with other lands); said lease is for a primary period of ten years, contains a provision for an annual deferred drilling rental of 50 cents per acre, and reserves as rental the usual 1/8 of the oil produced.
On September 14, 1949, Babcock assigned the lease to the defendant, the Amerada Petroleum Corporation. On June 16, 1955, Amerada assigned to Durland Trust Co. a 2½% overriding royalty of all oil, gas, etc. produced from the leased land. Plaintiff was not aware of this lease, or of Durland's royalty interest until 1955, when Amerada requested him to sign an affidavit to the effect that he claimed no interest in the minerals in the E½, Sec. 35. Plaintiff *470 refused to sign such affidavit and, on the contrary, claimed he owned the minerals. On August 29, 1955, Farnik entered into a primary period four-year oil and gas lease with Amerada Petroleum Corporation covering said E½, Sec. 35.
On November 18, 1955, Plaintiff commenced this action, seeking to quiet the title in himself to said E½, Sec. 35, and to have all claims of Weld County, the Durland Trust Company, and claims of Amerada arising out of the lease from Weld County, declared void and of no force or effect.
As of April 29, 1957, royalties from the oil produced from said E½, Sec. 35, amounted to $26,627.04, and those royalties, including royalties subsequently accruing, are being withheld by The Pure Oil Company, the crude oil purchaser, pending determination of this action.
Trial of the matter to the court was had August 27, 1957, and at the close thereof the trial judge announced that he found the issues in favor of the defendants and directed the county attorney to prepare findings and decree. On November 12, 1957, extensive findings of fact, conclusions of law, and judgment and decree were entered by the court, wherein the trial court quieted in plaintiff title to the surface only, quieted in Weld County title to the oil, gas and other minerals, subject only to the oil and gas lease from Weld County to Amerada and Durland's overriding royalty interest. The court also held as absolutely void the oil and gas lease from plaintiff to Amerada.
Plaintiff is here by writ of error seeking reversal, contending (1) that Weld County had no right or power to retain the minerals; (2) that its powers and duties in acquiring and disposing of real property on account of nonpayment of taxes are defined by the revenue statutes governing assessment, levy and collection of taxes, rather than general statutes defining the powers and duties of Boards of County Commissioners; (3) that the revenue statutes, though granting to the county power to sell parts or parcels from lands acquired by tax deeds, do not grant to the county power to divide the land horizontally, to reserve minerals, or to convey any title less than that held by the county; and (4) that the deed of conveyance to plaintiff is validthe reservation therein void.
The trial court concluded, among other things, that as a matter of law:
"12. Even if said county and said Board of County Commissioners had not had full authority to make said sale of said surface estate and to retain said mineral estate as was done in this case, nevertheless said sale of said lands without the minerals and said exception of said oil, gas and mineral estate was ratified, confirmed and validated by the validating statute of 1949, Section 36-11-4, C.R.S. '53."
The plaintiff contends that general powers granted by the Constitution and statutes to Boards of County Commissioners have no application to duties to be by them performed in disposing of title to lands acquired by counties through treasurer's deeds issued for nonpayment of taxes and that the commissioners have only such powers as are conferred by the statutes; that the revenue statutes provide for the foreclosure of tax liens by sale of the property against which the lien accrued as a means of collecting taxes, and contemplate that the property will be promptly sold and restored to the tax rolls and thus again produce tax revenue, not only for the county, but also for the state, school district, and other entities authorized to levy taxes. Weld County takes the position that it can, under its general powers, do as it sees fit with any property to which it acquires title. The findings, conclusions of law and decree herein, prepared by the county attorney, and signed by the court, mirror the views and contentions of Weld County.
The published notice of sale clearly states that the minerals are to be reserved by the county; the bid made and signed by plaintiff recites that the minerals are to be excepted. Preceding the auction sale, the *471 county attorney announced that "all mineral rights are being reserved by the county"; the deed issued and delivered to the plaintiff granted the land and provided:
"* * * and reserving therefrom to grantor, (Weld County) the oil, gas or other minerals therein."
The plaintiff for eleven years prior to the commencement of this action had possession of the land pursuant to his recorded deed, and during that time he made no claim to the minerals. Clearly the record shows that the county never intended to sell the minerals and that plaintiff knew he was not buying or paying for the minerals. He now claims that the statutes provide that the county having acquired title through a treasurer's deed, being part of the foreclosure proceedings of the tax lien, was duty bound to sell the property and was without power to reserve anything, and that the attempted reservation was void and mere surplusage and that plaintiff acquired a fee simple title. This contention of plaintiff finds strong support in: Burke v. Southern Pacific Railroad Co., 234 U.S. 669, 34 S.Ct. 907, 58 L.Ed. 1527; Walpole v. State Board of Land Com'rs, 62 Colo. 554, 163 P. 848; Kopplin v. Burleigh County, 77 N.D. 942, 47 N.W.2d 137.
We find it unnecessary to resolve this question, for the reason that even though the reservation was without authority and invalid when made, it was validated by Laws of 1949, Chapter 140, § 4, being: "An Act Relating To Oil, Gas And Other Minerals In County Lands," which provides:
"Section 4. All reservations of oil and gas and other mineral rights and sales of previously reserved oil and gas and other mineral rights in county lands heretofore made or entered into by any county acting by its Board of County Commissioners and all leases of oil and gas or rights and all unit agreements relating to or dealing with oil and gas and containing provisions similar to those set forth in Section 3 of this Act, affecting county lands, heretofore made or entered into by any county acting by its Board of County Commissioners are hereby confirmed, validated and declared to be legal and valid in all respects."
Plaintiff contends that this act does not apply to lands acquired through tax foreclosures. Much of the argument is predicated on the fact that in compiling the 1953 Colorado Revised Statutes, the above chapter is found under Chapter 36, C.R.S. '53, "County Powers And Functions," rather than under Chapter 137, "Taxation IGeneral Property Tax." We feel that counsel attaches undue significance to the position in which the compiler of C.R.S. has placed Chapter 140, Laws 1949. The above quoted section expressly governs lands acquired by the county on account of nonpayment of taxes as evidenced by Section 5 of said Chapter 140, which reads:
"The terms `real estate owned by a county' and `county lands' are each defined, for all of the purposes of this Act, to mean any real estate acquired and owned by a county under the laws relating to taxation or otherwise. The term `oil and gas' as used in this Act is hereby defined to mean oil, gas, casinghead gas, condensate and hydrocarbons or any one or more of them." (Emphasis supplied.)
Thus we see that the Act expressly covers the exact situation presented by this recordit does undertake to validate the deed issued to Farnik by Weld County and it does define County Lands as including those acquired by Farnik.
"A curative or validating statute is one whose purpose is to cure past errors, omissions, and neglects, and thus to make valid what, before the enactment of the statute, was invalid. * * A validating statute grants no indulgence for the correction of future errors and neglects." 16A C.J.S. Constitutional Law § 421, page 124.
"Common expressions of the rule are to the effect that the legislature may *472 validate retrospectively any proceeding which it might have authorized in advance, or may cure by subsequent statute what it might have dispensed with altogether. * * *." 16A C.J.S. Constitutional Law § 422, page 126.
"Generally speaking, the legislature may, within the constitutional limits of its power, cure formal defects in deeds and other written instruments, and give them the same validity as though they had been properly executed, since such legislation, even though it may operate to cut off a right of action that would otherwise exist, is not considered as depriving anyone of vested rights, but rather as carrying into effect the intent of the parties. * * *." 16A C.J.S. Constitutional Law § 434, page 138.
By virtue of this statute we find the parties to the deed placed in the exact position they intended: plaintiff is the owner of the surface, that which he intended to acquire and that for which he paid and that for which he has a deed of conveyance; the county is the owner of the minerals, that which it never intended to sell, that which it expressly reserved in its deed, and that for which it has never been paid.
Similar validating statutes have by this court been upheld.
The following language of this court, applied in Miller v. Limon Nat. Bank, 88 Colo. 373, 296 P. 796, 798, is equally applicable here:
"The conclusion is inevitable that the validating act here under consideration was intended by the legislature to apply to those sales of surface rights, and that it validates such sales unless subject to some constitutional objection. In this connection our attention is called to section 11, article 2 of the state constitution which provides `that no * * * law * * * retrospective in its operation * * * shall be passed by the general assembly,' and Lanning v. Osborne, C.C., 82 F. 575, 578, as holding that a contract unlawful when made is not validated by subsequent legislation. In our opinion, said constitutional provision does not apply, and was not intended to apply, to acts validating contracts theretofore made on behalf of the state. [City of] New Orleans v. Clark, 95 U.S. 644, 655, 24 L.Ed. 521; Cooley on Constitutional Limitations (8th Ed.) vol. 2, p. 779; Satterlee v. Matthewson, 2 Pet. 380, 7 L.Ed. 458; Cowell v. Colo. Springs Co., 3 Colo. 82."
See also Driscoll v. State, 88 Colo. 390, 297 P. 989.
The deed given to plaintiff having been validated by the 1949 statute precludes plaintiff from asserting ownership of the minerals which by the validated deed are expressly reserved to the county; by the same statute the lease granted by Weld County and now held by Amerada has been validated, and the court's judgment quieting Weld County's title to the minerals, subject to Amerada's lease and Durland's overriding royalty interest is correct and is affirmed.
In view of the elaborate and far-reaching findings of fact and conclusions of law entered by the trial court, and the further fact that the Colorado State Association of County Commissioners, a voluntary nonprofit organization, representing the county commissioners of the sixty-three counties of the state of Colorado has, through counsel, appeared herein as amicus curiae and urges the correctness of the trial court's findings and conclusions, and in view of the further fact that the correctness of each of the court's findings are challenged by plaintiff, and because of the public rights involved, and since counsel have fully and ably argued the matters, and lest it be deemed that by affirmance we approve several findings of the trial court which we hold are incorrect and for which we find no sanction in law, the following observations are deemed advisable.
From the record, briefs and appearances before us it appears that Weld County and the aforementioned Association of County *473 Commissioners take the position that counties have power in dealing with real property to do anything and everything unless prohibited by statute. Illustrative of this attitude is the following, taken from the court's conclusions of law, conclusions prepared by counsel for Weld County:
"5. That the Board * * * had and has full power and authority * * * to make such orders concerning the property of the County as it deems expedient * * * where no other provisions are made by law." (Emphasis supplied.)
"6. The defendant, The Board of County Commissioners of the County of Weld * * * had full right and authority * * * unless prohibited or limited by express statute to the contrary." (Emphasis supplied.)
"7. There was and is no statute of the State of Colorado which limited or prohibited said county from * * *." (Emphasis supplied.)
"9. There is no provision in Section 137-10-43, C.R.S. '53 which restricted the right of said defendant Board to do or prohibited it from doing what it did do, or which restricts * * *." (Emphasis supplied.)
The above quotes are repugnant to the well established rule of law that county commissioners are officers with only delegated powers; they possess only such powers as are expressly conferred on them either by the Constitution or statutes, and, in addition, such implied powers as are reasonably necessary to the proper execution of those expressly conferred. Robbins v. Boulder County Commissioners, 50 Colo. 610, 115 P. 526.
From the above quotes one might conclude that boards of commissioners have unlimited, inherent powers and are limited only as prohibited or restricted by statute. Counties have only such powers as are delegated to them. Their claimed inherent powers are imaginary and lacking in reality.
In this case Weld County acquired title to the property involved on November 15, 1940, and now nearly nineteen years later still retains title to this property and presumably claims that it is the legal and equitable owner of the property, free of statutory mandates and inhibitions, and entitled to retain as its own all revenue derived therefrom, and that it is under no obligation to ever dispose of the property. The Colorado State Association of County Commissioners has appeared herein as friends of the court and urges that we approve the actions and policies of Weld County as evidenced by the record before us and that we place our stamp of approval on all of the findings and conclusions of the trial court. This we do not do.
We find no sanction in law for some of the actions of Weld County in dealing with the land in question subsequent to the issuance to it of the treasurer's deed. The county does not have blanket authority to deal in real estate. Its authority is
"* * * to purchase and hold real and personal estate for the use of the county, and lands sold for taxes, as provided by law." C.R.S. '53, 36-1-1(2).
The property in question was not purchased for the use of the county, it is not being held "for the use of the county." Rather, it is being held as a speculation; it is being withheld from the tax rolls and not "as provided by law," but contrary to express statutory provisions.
The county has no power to acquire real or personal property as a speculation or an investment, nor does it have the power to retain property lawfully acquired for the use of the county when the use therefor no longer exists. It may acquire and retain such property as it now reasonably needs, or in the foreseeable future may reasonably needno more. Such needed property is exempt from taxationother not needed property should be on the tax rolls as provided by law.
Counties and county officers are charged with specific statutory duties in assessing property for tax purposes, levying taxes, collecting taxes, foreclosing tax liens when *474 the taxes are not paid, acquiring title to tax delinquent property and disposing of property so acquired. In these matters the counties and their officers act in behalf of the State, Towns and Cities, School Districts, conservancy districts, and other taxing authorities. In fact taxing agencies, other than the State, pay the Treasurer for collecting and remitting taxes by them levied. C.R.S. '53, 56-4-2.
Title to the land involved herein was acquired by Weld County pursuant to C.R.S. '53, 137-10-42. The title thus acquired was subject to all of the restrictions and limitations imposed by statute governing the acquisition and disposition thereof; among other statutory requirements we find the following:
"* * * Thereafter the county commissioners shall list such property for sale * * * may make such essential repairs thereon * * * as shall be necessary for the protection and preservation of such property." Laws 1941, chap. 192, sec. 1. (§ 211(a), chap. 142, 1935 C.S.A.) (C.R.S. '53, 137-10-42). (Emphasis supplied.)
"* * * Such real estate * * shall be sold * * * at public sale, such notice of sale shall be advertised in two issues of a newspaper * * *. All such notices shall reserve the right upon the part of the board * * * to reject any or all bids which are less than the appraised value thus fixed by the County Assessor for the year in which the sale is made * * *. Such real estate may be sold in such lots or parcels * * * as the Board of County Commissioners shall deem acceptable but no deed shall be issued until the purchaser shall have made payment in full. * * * Upon written application of any person * * the board * * * shall offer for sale the property requested by such person * * *. The board may, in its discretion, decline and refuse to offer for sale any lots or parcels as may be necessary or useful for the ordinary functions of county government." Laws 1943, chap. 165, sec. 2. (XXX-XX-XX(4)). (Emphasis supplied.)
"All net proceeds from the sale, lease * * * of such real estate * * * shall first be applied to the payment of all unpaid taxes accrued against the property up to the time the tax deed was issued to the county and any remaining avails of the sales shall be credited to the ordinary county revenue fund of the county." Laws 1941, chap. 192, sec. 3. (XXX-XX-XX).
"Whenever such real estate is conveyed by a county treasurer to the county by tax deed upon or under the provisions of Section 1 of this Act, the county assessor shall make an appraisal of the full cash value of said real estate each year at the same time and in the same manner as is now provided by law for the appraisal of real estate subject to taxation for general state, county and school purposes and shall state in such appraisal the amount which such real estate would be taxed for general state, county and school purposes and special assessments in such year, if it were subject to such taxes and assessments, and the assessor shall furnish to the board of county commissioners a copy of such appraisal and statement." Laws 1941, chap. 192, sec. 2(a). (XXX-XX-XX(1)).
The record in this case shows that Weld County, late in 1943, offered for sale 167 tracts of land on which it had acquired treasurer's deeds. From each tract sold it reserved all minerals. At the time of this sale in 1943 there was no statutory authority to reserve the minerals. The fact that the statute provides that tax title land may be sold
"* * * in such lots or parcels * * * as the board * * * shall deem acceptable * * *"
does not mean that the board can reserve minerals or make a horizontal division of the property. The legislature in 1949 adopted a statute giving to counties express authority to reserve minerals. Thus it appears *475 the 1949 legislature recognized the fact no such authority had been previously granted. Laws of 1949, chapter 140. (C.R.S. '53, 36-11-1 et seq.)
Promptly on acquiring title to real estate not needed for county purposes, steps should be taken to sell the property as provided and required by law. The fact that present statutes permit the county to reserve the minerals only means that it may reserve and sell the minerals separately. All county-owned property not needed for the use of the county should be sold promptly and as soon as lack of need is apparent. The fact that it is subject to a valid lease or leases does not preclude a sale; the propertysurface, minerals or bothcan be sold subject to the terms of the lease, which lease may add to or detract from the value of the property. Such procedure should promptly be pursued with reference to the subject property and all other properties held by the various counties and not needed for county purposes.
The property involved herein has, in a short period of time, produced net revenues of over $25,000. Property so producing should have a cash value, an assessable value, in the tens, if not hundreds, of thousands of dollars and when put back on the tax rolls as provided by law it will provide thousands of dollars in tax revenue for the state, county, school district and other taxing authorities. When this property is restored to the tax rolls Weld County will get its proper share of the tax revenue derived therefrom and will have to forego its ill-gotten royalties and rentals from lands that should be privately owned rather than owned by the county. Weld County pursuing its present policies as indicated by this record and approved in the trial court's findings, conclusions and decree could become the owner of and hold at its pleasure unlimited non-taxable real estate and thus deprive the state, school district and others of tax revenue and by such actions cripple other governmental agencies dependent for their existence upon tax revenues.
To such extent as Weld County has gained by its unauthorized retention of this and other property, the state, school district, and other taxing authorities have lost. The county acting for itself and as agent for other taxing authorities is obligated by law to perform its duties in the premises.
The judgment, except as to those matters noted above with disapproval, is affirmed.
MOORE and DOYLE, JJ., concur in the results.
DAY, J., did not participate.