No. 20,449.

CENTENNIAL PROPERTIES, INC., *v.* THE CITY OF LITTLETON, COLORADO.

(390 P. [2d] 471)

Decided February 17, 1964.    Rehearing denied April 6, 1964.

192

Messrs. GALLIGAN and FOLEY, for plaintiff in error.

Messrs. STERNBERG & TAYLOR, for defendant in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

WE will refer to plaintiff in error as Centennial or defendant. Defendant in error was plaintiff in the trial court and will be referred to as Littleton or plaintiff.

The action was commenced by Littleton to obtain a complete adjudication of the rights of the parties with respect to real property described in the complaint, and particularly with respect to the validity and effectiveness of certain deeds of trust to secure to it the payment of percentages of gross income derived from businesses situate on said real estate. It alleged failure of defendant to make the claimed percentage payments, and prayed for judgment for the amounts due and for a decree of foreclosure to satisfy the judgment.

Centennial filed its answer and counterclaim. It sought a decree that it was the fee title owner, free of any liens based upon trust deeds mentioned in the complaint. Defenses contained in said answer included the following: A denial of the material allegations of the complaint; estoppel; and title in the defendant by adverse possession and payment of taxes under color of title for more than seven years. Generally, the trial court found the issues in favor of Littleton and granted the relief prayed for by it.

The written instruments which were introduced in evidence give rise to a situation so bizarre in nature as to require a rather lengthy and detailed statement of facts:

Littleton, prior to March 30, 1950, was the owner of

a tract of land which we designate as parcel A which had been used in the past for town sewer purposes. Lying on the southwesterly side of parcel A between it and U. S. Highway 85 was a triangular tract then owned by the State of Colorado and designated herein as parcel B. After some preliminary negotiations for the leasing of the "old sewer plant ground," one Marshall F. Norling tendered a written proposal to purchase parcel A from plaintiff. Although the proposal makes no reference to parcel B above described, it was apparently agreed between Norling and plaintiff that parcel B was part of the deal and that when Littleton subsequently acquired title to parcel B it would convey it to Norling as part of the transaction, subject to the same terms and conditions.

By resolution adopted April 3, 1950, plaintiff accepted Norling's proposal. The mayor and clerk of the Town of Littleton were authorized to accept the proposal on behalf of plaintiff and to carry out the terms of the agreement.

By the terms of Norling's offer and Littleton's acceptance, plaintiff agreed to convey the property to Norling, title to revert to plaintiff at the end of 99 years from the date of deed. The purchase price was to be $20,000.00 and Norling was to become obligated to pay an agreed percentage of 1% of the gross annual revenue produced from the businesses operated on said property, payable monthly during the 99-year period. Norling's proposal provided, in reference to percentage payments, as follows:

"And, on the gross annual income from business conducted on the tract now referred to as the sewer plant: 1% of the gross annual income. That the percentages as hereinabove set forth shall continue to be paid after the purchase price has been paid in full and until the reversion provision in the deeds are effected." (Plaintiff's Exhibit K, p. 3.)

The purchase price allocable to the property was to

be paid as follows: $2,000.00 upon closing, balance of $18,000.00 payable $400.00 or more per year at the option of Norling, commencing five years from date of conveyance. The deferred payments and the 1% of gross annual income were to be evidenced and secured by note and deed of trust (Exhibit M) which contained the statement that it "shall be the security for the payment of said monthly percentages for a period of 99 years from their date." Norling's proposal also provided that the note secured by deed of trust was to be without interest "but that in lieu of an interest payment the percentages of gross shall be paid to the seller." Norling's offer further provided that the property should be used "for the construction, maintenance, conduct and operation of a bar, lunchroom and filling station or other suitable use." Paragraph 17 of the proposal provided "this agreement shall be assignable and shall be binding upon the parties, their heirs, executors, successors and assigns."

Pursuant to the agreement between the parties, on October 23, 1950, plaintiff executed a warranty deed conveying parcel A to Marshall F. Norling. This deed contained the following conditions below the legal description but above the habendum clause:

"This deed is made upon the express condition that the above described property and improvements thereon shall revert to the Town of Littleton, Colorado, at the expiration of ninety-nine years from the date of this deed, and that at the expiration of said term title hereby conveyed shall re-invest and revert to grantor, its successors or assigns.

"This deed is made upon the further express condition that grantee shall within 36 months from this date, commence construction of a restaurant, bar and motel, or other suitable useful structure, and complete same and place the same in operation with due diligence.

"This deed is made upon the further express condition that after the expiration of fifty (50) years from date, the property remains vacant or is unproductive for a

period of three years so far as revenue to the grantor is concerned under the terms of the deed of trust executed concurrently herewith, that then the title hereby conveyed shall re-invest and revert to grantor, its successors or assigns."

Also executed by Norling on October 23, 1950, was a promissory note for $18,000.00 (Defendant's Exhibit 1). This note provided for principal payments "in consecutive annual installments of four hundred ($400.00) dollars, or more at option of payor, the first installment payable on October 23, 1955, and a like amount on the 23rd day of October of each year until paid, *interest at the rate of no (0) per annum, but in lieu thereof the owner of the property securing this note shall pay 1% of the gross annual income from any business conducted on said property."* (Emphasis supplied.) Securing this note was a deed of trust (Plaintiff's Exhibit C), likewise dated October 23, 1950, which recited the terms of the note and conveyed parcel A to the Public Trustee as security for payment of the note and which deed of trust contained the following provisions after the legal description but above the habendum clause:

"That nothing herein contained shall prevent the execution of a release of this deed of trust by the Public Trustee at the request of the holder of the note, upon the payment of said principal sum of $18,000.00 and the payment of any percentage of the gross annual income then due, if any, as set forth above, and the owner of the above property shall be entitled to such release upon the making of such payment. Such release however shall not relieve the owner of the property or said businesses from the obligation of paying the percentage payments on the gross annual income until the title shall revert to the Town of Littleton under the terms of the warranty deed executed concurrently herewith.

"It is further stipulated and agreed that after the payment of the principal sum of $18,000.00 secured by this deed of trust, that thereafter for a period of 99 years

from date of this deed of trust, the owner of said property shall pay the percentages of the gross annual income from any business conducted on said property, and failure to so make said payments as provided herein, shall, without jeopardizing any other remedy that the Town of Littleton, Colorado, may have, constitute a breach of the conditions of this deed of trust so as to entitle the holder of said note, or of the Town of Littleton, its successors or assigns, to a foreclosure as hereinafter provided for any other breach of this trust deed."

The warranty deed and deed of trust were duly recorded with the Arapahoe County Clerk and Recorder's office. Thereafter, on June 14, 1951, Marshall F. Norling conveyed parcel A to the defendant.

March 25, 1952, plaintiff's council passed a resolution authorizing its mayor and clerk to execute a quit claim deed to parcel B directly to defendant, inasmuch as it was recited that Norling had previously conveyed his interest in the land to defendant and had agreed that plaintiff should convey parcel B to defendant. Attached to the resolution is Norling's assignment and consent. (Plaintiff's Exhibit N). Pursuant to the authority of this resolution a quit claim deed to parcel B was executed on behalf of plaintiff by the mayor and clerk conveying parcel B to defendant. The deed contains the following conditions after the legal description but above the habendum clause:

"This deed authorized by resolution of the Board of Trustees of the Town of Littleton.

"Said property is not being used for governmental purposes by the Town of Littleton.

"This deed is made upon the express condition that the above described property and any improvements thereon shall revert to the Town of Littleton, Colorado, at the expiration of ninety-nine years from the date of this deed, and that at the expiration of said term title hereby conveyed shall re-invest and revert to grantor, its successors or assigns."

On March 25, 1952, plaintiff's council passed another resolution providing that upon payment to plaintiff of $5,000.00, and upon execution of a deed of trust by defendant upon a portion of parcel B (which had been conveyed by plaintiff to defendant by quit claim deed, (plaintiff's Exhibit F), plaintiff's mayor and clerk were authorized to execute a partial release of deed of trust to a portion of parcel A and parcel B. In accordance with the condition of this last resolution defendant executed and delivered to plaintiff a deed of trust which was duly recorded (Plaintiff's Exhibit G). This deed of trust recited that the balance on the note had been reduced to $16,000.00 and it contains the following provisions after the legal description but above the habendum clause:

"That nothing herein contained shall prevent the execution of a release of this deed of trust by the Public Trustee at the request of the holder of the note, upon the payment of said balance of said principal sum of Sixteen Thousand ($16,000.00) Dollars and the payment of any percentage of the gross annual income then due, if any, as set forth above, and the owner of the above property shall be entitled to such release upon the making of such payment. Such release however shall not relieve the owner of the property or said businesses from the obligation of paying the percentage payments on the gross annual income until the title shall revert to the Town of Littleton under the terms of the quit claim deed executed concurrently herewith.

"It is further stipulated and agreed that after the payment of the principal sum of $16,000.00 balance secured by this and said other deed of trust, that thereafter for a period of 99 years from October 23, 1950, the owner of said property shall pay the percentages of the gross annual income from any business conducted on said property, and failure so to make said payments as provided herein, shall, without jeopardizing any other remedy that the Town of Littleton, Colorado, may have,

constitute a breach of the conditions of this Deed of Trust so as to entitle the holder of said note, or of the Town of Littleton, its successors or assigns, to a foreclosure as hereinafter provided for any other breach of this trust deed."

On August 18, 1952, Ordinance No. 374 was adopted by plaintiff, entitled "An Ordinance Ratifying, Confirming and Approving the Sale and Conveyances by the Town of Littleton, Colorado, of the Lands Described in this Ordinance." This ordinance relates to parcels A and B and to the transactions in question (Plaintiff's Exhibit H). It further explains that the deed of trust, Plaintiff's Exhibit G, refers to the original indebtedness of Norling and not to any new indebtedness, and that the deed of trust was given as additional security for the original indebtedness.

Plaintiff's Exhibit I is a certified copy of Ordinance No. 42, series of 1956, entitled "A Bill for an Ordinance Concerning the Former Sale of the Old Sewer Plant and Dump Sites, the Issuance of a Correction Deed, the Ratification and Approval of the Sale, Approval of the Release of a Trust Deed and Approval of a New Trust Deed." The title sufficiently advises of its contents and refers to the previous transactions between plaintiff, Norling and defendant.

On March 31, 1961, Centennial paid the sum of $13,600.00 to plaintiff, said sum being the balance of the indebtedness owed on the promissory note, defendant's Exhibit 2. The note was not located at that time and plaintiff gave its receipt for payment. Several days later the note was delivered to defendant marked "Paid in Full — March 31, 1961, William A. McCarty, City Treasurer."

Plaintiff's city clerk, William A. McCarty, pursuant to direction of plaintiff's city manager, executed a release of deed of trust to that portion of the subject property identified as within the yellow boundaries on plaintiff's Exhibit A. This release, introduced in evi-

dence as defendant's Exhibit No. 3, was duly executed and recorded by the Public Trustee on April 4, 1961. On April 20, 1961, a release, introduced in evidence as defendant's Exhibit 4, was executed and recorded by the Public Trustee at the request of B. R. Hix, designated as president of defendant. The foregoing releases (Defendant's Exhibits 3 and 4) released the trust deeds identified as plaintiff's Exhibits C and G.

Pursuant to the agreement between plaintiff and defendant concerning the conveyance of the subject property and use thereof for business purposes, defendant constructed improvements on the premises consisting of a liquor store building and a restaurant and lounge at a cost of $134,000.00.

Defendant's Exhibit No. 1 is a stipulation showing the dates and amounts of principal payments made on the $18,000.00 promissory note (Defendant's Exhibit No. 2), and also, the amounts of percentage of gross income paid plaintiff by defendant from the income-producing businesses operated on the premises during the years 1952 through 1961. The total amount paid plaintiff by defendant under the percentage clause to the date of stipulation was $45,065.03. Defendant has ceased making the 1% percentage payments of gross income from business conducted on the subject premises to plaintiff, which cessation gave rise to the controversy before us.

The trial court made a supplemental finding and entered judgment thereon that during the period from April 1, 1961, through March 31, 1962, the gross amount received from businesses conducted on the premises was $1,136,283.38 and that $11,362.83 was due Littleton under the "percentage" clause above described. The trial court decreed that the legal result of the transactions detailed above was to create a 99-year leasehold estate in Centennial. The court decreed:

"That defendant is the owner of the 99-year estate in the subject property and is obligated to make monthly payments of 1% of the gross annual income from busi-

nesses conducted on the premises each year during the term of said estate, and that this obligation constitutes a charge and encumbrance upon defendant's interest in the real estate which is binding upon defendant and its successors in interest or assigns."

The trial court further decreed that:

"The deeds of trust, Plaintiff's Exhibits C and G, have been fully released and no longer constitute liens upon the subject property. However, such releases do not and have not discharged the obligation of defendant to pay the 1% of gross annual income from businesses conducted on said premises, which is a continuing obligation existing independently of said deeds of trust and which constitutes an encumbrance on the real estate binding upon all who have actual or constructive notice of the same. For a default in the performance of said obligation plaintiff is entitled to have an accounting and judgment for the amount found to be due and owing, and foreclosure of the subject property to satisfy said judgment if the same is not satisfied within a reasonable period of time."

■ At all times pertinent to the issues in this action Littleton was an incorporated town and as such had only those powers which had been theretofore granted to such towns by the General Assembly. This opinion is not necessarily applicable to home rule cities which operate under a far different delegation of powers. The applicable statutory provisions which Littleton claims grant the power for it to enter into the above detailed transactions now appears in C.R.S. '53, 139-32-2 and in pertinent part reads as follows:

"Power to sell public works — real property. The city council of cities and board of trustees of towns shall have the following additional powers:

\* \* \*

"(2) By ordinance, to sell and dispose of any other real estate owned by the municipality upon such terms

and conditions as such city council or board of trustees may determine at a regular or special meeting.

"Deeds of conveyance duly executed and acknowledged by the proper officers of such cities or towns and purporting to have been made in pursuance of this section shall be deemed prima facie evidence of due compliance with all the requirements hereof."

The trial court ordered that parol evidence be produced concerning the negotiations between the contracting parties. This order was entered following the first hearing and after the court had the matter, as first submitted, under advisement for about three months. Counsel for each of the parties objected to parol evidence, each taking the position that all negotiations were merged in the signed written documents and that there was no uncertainty in the meaning of said instruments warranting the introduction of parol evidence to ascertain the intent of the parties. Nevertheless the trial court insisted that parol evidence be produced and accordingly the Mayor of Littleton, who held office when the instruments were signed, and the then attorney for Littleton, were called to the stand. The record discloses that they were called as witnesses for the plaintiff even though plaintiff objected to the action of the court in taking this testimony. Counsel for Centennial made numerous objections to the admissibility of all the evidence produced at this second hearing, all of which were overruled.

■ The former mayor testified that in the beginning of negotiations the parties intended to enter into a written lease of the premises for a term of 99 years. This plan was abandoned because the city attorney, as well as the attorney for Mr. Norling, advised that Littleton did not have the power to execute a lease on the premises. It was provided in the "warranty deed" (Exhibit B) that the Town of Littleton, " * * * hath granted, bargained, sold and conveyed and by these presents doth grant, bargain, sell, convey and confirm unto the said party

of the second part, his heirs and assigns forever, all the following described lot or parcel of land * * * ." This language amounts to an outright conveyance of the fee simple title to the lands described. By employing this language the officers of Littleton were exercising their statutory power "to sell and dispose of" the land. The "reverter" clause by which they sought to completely nullify the grant "to the party of the second part, his heirs and assigns forever," was nothing more than a subterfuge by which Littleton in a single instrument sought to "sell and dispose of" the land in one sentence of the deed, and in another sentence, to re-acquire the title and again become the owner of the property after a 99-year term, and in the interim to give to the grantee in the "warranty deed" the status of the holder of a leasehold interest. This they had no power to do.

The contention, shared by the attorneys for the plaintiff and Norling, that Littleton did not have the power to lease the property, was sound. The highly unusual and belabored effort to accomplish a result which was beyond the power of the officers of plaintiff to bring about, was ineffectual to give validity to that portion of the transaction relating to a "reverter" or the payment of a percentage of gross income from the property after the promissory note (which provided for a percentage payment in lieu of interest) was paid in full. The only power possessed by Littleton with reference to this property, which admittedly was no longer needed for any public purpose, was the power "to sell and dispose of" it. The officers of the town were informed by the statute that, "Deeds of conveyance duly executed and acknowledged * * *" (Emphasis supplied.) by them were prima facie evidence of due compliance with the terms of the statute. Nothing short of a deed of conveyance is a compliance with the statute. The term "sell and dispose of" as used in this statute means to get rid of, to finish with, to fully relinquish all interest in the property. to transfer and convey the same. Rider v. Cooney,

94 Mont. 295, 23 P. (2d) 261, *The Brazil,* (C.C.A. Ill.) 134 Fed. (2d) 929. In the opinion of the Supreme Court of Iowa, in a matter entitled *In Re Hubbel Trust,* 135 Iowa 637, 113 N.W. 512, a provision of the trust indenture was that the trust property should not be "sold or disposed of." The trustees executed a 99-year lease and the question was whether they had "disposed of" the property contrary to the terms of the trust. The court said that, " * * * a voluntary parting with anything short of an estate in the land is not a 'disposal' of it."

When, as here, the term "disposed of" is associated in the context with the word "sell," and those whose duty it is to "sell and dispose" of property are advised to execute "deeds of conveyance," then under the principle contained in the legal expression "noscitur a sociis" the meaning of the term "disposed of" takes on definite limitations from this association. *Scott v. State,* 6 Ga. App. 332, 64 S.E. 1005. In this context the term "dispose of" means "the execution of the deed of conveyance." *Kinney v. Hoffman,* 151 Ohio St. 517, 86 N.E. (2d) 774.

It is true that cases from other jurisdictions have given the term "disposed of" a broader meaning under the factual situations wholly dissimilar to those present in the instant case. Under varying factual situations the term has been given "many shades of meaning." See *Whitfield v. Thompson,* 85 Miss. 749, 38 So. 113. In this jurisdiction the public policy of this state with regard to the duty of town trustees in connection with property no longer needed for town purposes is substantially the same as the duty of county commissioners with relation to excess county property. With reference to the latter we said in *Farnik v. Board of County Commissioners,* 139 Colo. 481, 341 P. (2d) 467:

"The county has no power to acquire real or personal property as a speculation or an investment, nor does it have the power to retain property lawfully acquired for the use of the county when the use therefor no longer exists. It may acquire and retain such property as it now

reasonably needs, or in the forseeable future may reasonably need — no more. Such needed property is exempt from taxation — other not needed property should be on the tax rolls as provided by law."

In *Hayward v. Board of Trustees of the Town of Red Cliff,* 20 Colo. 33, 36 Pac. 795, this court said:

"Undoubtedly, an incorporated town or city may *acquire and hold* such real and personal property as may be necessary to enable it to carry on its corporate business and exercise its proper municipal functions; but it is idle to claim that a municipal corporation can lawfully engage in the business of buying, selling, or dealing *generally* in real estate, either as principal or broker."

It is equally "idle to claim" that towns and cities of the first and second class have the power to execute long term leases on property not needed for municipal purposes, to become a speculator in land values, to become a landlord and finance town expenses from rentals collected from tenants instead of "selling and disposing of" said property. It is "idle to claim" that a town has the power, as consideration for such a lease, to demand and receive a percentage share in the income received from the operation of a liquor and restaurant business, or that of a filling station, or any other business which under our system is conducted by private enterprise.

The grant of the fee title to the described real estate to Norling and "his heirs and assigns forever" for the purchase price of $20,000.00, payable $2,000.00 in cash and the balance of $18,000.00 to be paid as provided by the terms of the promissory note secured by deed of trust, was valid and to that extent the deed executed by the plaintiff is upheld. There was a complete lack of power in Littleton to bargain for a share in the gross receipts of the restaurant and liquor business, or the filling station, or to demand a "reverter" of the title to the real estate at the end of 99 years. All provisions in

the instruments with regard thereto are void and of no force and effect.

We think it pertinent to direct attention to certain other facts which establish convincingly that Littleton has been more than adequately compensated for its conveyance to the predecessor in interest of the defendant. The full purchase price of $20,000.00 has been paid. In addition thereto Littleton received the sum of $45,065.03 under the provisions of the note requiring that 1% of the gross business conducted upon the premises should be paid "in lieu of interest." Thus $65,065.03 has been received by the plaintiff for transfer of title to approximately two acres of ground for which it had no use in 1950. The attorney then acting for Littleton testified that at that time the property was a "swamp that would require a great deal of filling, and money to do it."

■ Reduced to essentials, Littleton contends that it had power in "disposing of" the land as it did, to collect this $65,065.03, and in addition thereto to demand payment (on the basis of present gross receipts) of approximately $12,000.00 per year for 88 years, and then to again become the owner of the land and all improvements placed upon the premises. This would mean a total of $1,121,065.03 and a complete recovery of the original land with all improvements thereon. A mere statement of this proposition leads at once to the conclusion that Littleton by its percentage and reverter clauses was functioning out of harmony with its statutory duty to "sell and dispose of" the two acres of "swamp" land for which it had no use in 1950. During all the years from 1950 to 1961 the taxes levied against the property, including the mill levy for town purposes, were assessed in the name of Centennial as the owner thereof, and were paid by the defendant.

The judgment is reversed and the cause remanded with directions to dismiss the plaintiff's complaint and to enter a decree quieting the title of defendant in and

to the said property against any and all claims of Littleton based upon the pleadings in this action.

MR. JUSTICE DAY not participating.