Mr. Garry Mitchell Executive Director Department of Administration 1525 Sherman St., 7th Floor Denver, CO 80203
Dear Mr. Mitchell:
This opinion letter is in response to the request of your predecessor, Mr. Lee White, for an attorney general's opinion regarding the above-referenced matter.
QUESTIONS PRESENTED AND CONCLUSIONS
Mr. White's request for an attorney general's opinion presents four questions, which are listed below together with my conclusions with respect thereto:
 1. Whether the state owns the mineral rights on the subject property?
 My conclusion is "yes." It is my opinion that the state owns these mineral rights by virtue of a quiet title action in which title to the subject property was quieted in the state.
2. Whether the state's mineral rights have been or could be defeated by language in the federal patent to the predecessor of the town of Fairplay concerning mines of gold, silver, cinnabar or copper?
 My conclusion is "no." The facts discussed below establish that no mines of gold, silver, cinnabar or copper were known or held under valid mining claims at the time the town-site patent issued.
3. Whether the Department of Administration is the only state agency which has statutory authority over the mineral rights on the subject property?
 My conclusion is "yes." The Department of Administration has this authority.
4. Whether the Department of Administration's authority over the subject property includes the authority to lease mineral rights?
 My conclusion is "yes." The Department of Administration has specific statutory authority to lease the Fairplay property. This statutory authority to lease includes the right to lease the minerals thereon.
ANALYSIS
1. In order to determine whether the state owns the mineral rights to certain property within the town of Fairplay, it is necessary to examine a brief history of conveyances concerning said property.
The property in question is described in House bill 1570, 1977 Colo. Sess. Laws ch. 37, § 1. By federal patent dated August 17, 1872, this property was conveyed to South Park City, which later became the town of Fairplay. This patent, however, states that title was not acquired thereby "to any mine of gold, silver, cinnabar or copper or to any valid mining claim or possession held under existing laws of Congress." (The significance of this language is discussed in detail in part 2 of this analysis.) On August 23, 1872, the land was deeded to one Frederick A. Clark. Through conveyances after Clark's death, the South Park Dredging Company acquired title to the subject property. On May 30, 1938, South Park Dredging Company conveyed the property to the State Mineral Resources Board by quit claim deed. This deed also conveyed the mineral rights by explicit language therein. Later, the town of Fairplay quit claimed its interest in this property to the state by deed dated August 16, 1938. This deed, however, specifically did not convey the mineral rights. Several years later, on July 21, 1975, the district court in Park County entered judgment quieting title to the subject property in the State of Colorado. The town of Fairplay was a party to this action.
Prior to the quiet title action in 1975, the state's title to the subject minerals was questionable for two reasons. First, a quit claim deed only conveys that which is owned by the grantor but it does not warrant that title is actually in the grantor. Thus, even though the deed from South Park Dredging Company conveyed the mineral rights, unless South Park had title to those rights, the state did not acquire them. Second, the quit claim deed from the town of Fairplay specifically stated that mineral rights were not conveyed. Thus, if the town of Fairplay rather than South Park Dredging Company actually owned the mineral rights, they would not have passed to the state.
The above-described uncertainty was resolved in 1975 by the quiet title action. Said action was brought by Fairplay Alma Tailings Disposal Company against the State Mineral Resources Board, the State of Colorado, the city of Fairplay, and all unknown persons who claimed any interest in the subject matter of the action. In that case, the plaintiff recognized the state's legal title but claimed equitable title to the subject property due to certain bonds owned by the plaintiff. These bonds had been issued by the State Mineral Resources Board prior to its abolition in 1963. The court recognized the plaintiff's interest but concluded that it was insufficient as a matter of law to quiet title in the plaintiff. Accordingly, the court quieted title in the State of Colorado. In its order, the court did not except the mineral rights associated with the property in question. Thus, it must be presumed that title to these mineral rights was quieted in the state, since the ownership of the surface carries with it the ownership of the underlying minerals unless there has been a severance of the surface and mineral estates by clear and distinct wording in the conveyance. Radke v. Union PacificRailroad, 138 Colo. 189, 334 P.2d 1077 (1958); C.R.S. 1973,38-30-107.
In addition, it should be noted that the court action quieting title in the state bound all parties to the action including the town of Fairplay. Colo. R. Civ. P. 105(a). As a result, the town of Fairplay could not now successfully argue that it owned the mineral rights in question.
Finally, it is significant that the state's ownership of the subject mineral rights was verified by a title commitment issued by TransAmerica Title Insurance Company at the request of the town of Fairplay. This title commitment, dated May 15, 1980, lists the State of Colorado as the owner in fee simple of the subject property including the mineral rights, except for "any mine of gold, silver, cinnabar or copper or any valid mining claim or possession" as reserved in the federal patent to the city of South Park. As discussed below, this exception does not defeat the state's ownership of the mineral rights in this case.
2. Based on the foregoing analysis, the only factor which could adversely affect the state's ownership of the subject mineral rights is language which appears in the federal patent that issued in 1872 to the predecessor of the town of Fairplay. The pertinent language states:
 No title shall be hereby acquired to any mine of gold, silver, cinnabar or copper or to any valid mining claim or possession held under existing laws of Congress.
In my opinion, this language does not defeat the state's ownership of the mineral rights in question.
The language quoted above encompasses two classes of mining claims. The first type is not characterized by possession in any person but rather by whether the property is known to contain minerals of such extent and value as to justify expenditures for the purpose of extracting same. The second type is characterized by possession in a person under existing mining laws or mining customs or under a valid mining claim. If either of these types of mining claims exist prior to the issuance of the town-site patent, then title does not pass to the property covered by such claims. Dower v. Richards, 151 U.S. 658
(1893); Davis v. Weibbold, 139 U.S. 507 (1890);Deffeback v. Hawke, 115 U.S. 392 (1885); Golden v.Murphy, 31 Nev. 395, 103 P. 394 (1909); Callahan v.James, 141 Cal. 291, 74 P. 853 (1903); Moylev. Bullene, 7 Colo. App. 308, 44 P. 69 (1896). However, if such is not the case, rights acquired under the town-site patent cannot be defeated even if the land in question is later discovered to be valuable for mining purposes.
 If the lands are not known at that time when the town-site patent takes effect to be so valuable for mining purposes, the fact that they have once been valuable, or are afterwards discovered to be still valuable, for such purposes, does not defeat or impair the title of persons claiming under the town-site patent.
Dower v. Richards, supra at 663.Accord, Moran v. Horsky, 178 U.S. 205 (1900);Davis v. Weibbold, supra; Emerson v.Kennedy Mining Milling Company, 169 Cal. 718,147 P. 939 (1915); Reilly v. Blackmoor, 2 Ariz. 272,15 P. 26 (1887). See also Larned v. Jenkins,113 F. 634 (8th Cir. 1902).
Here, as discussed in part 1, supra, the State of Colorado derived its title to the land in question under the town-site patent which issued to the predecessor of the town of Fairplay. If said property were known to contain minerals of such extent and value as to justify expenditures for the purpose of extracting same or if there were any valid mining claims, then title did not pass under the town-site patent. The records of the United States Bureau of Land Management establish that at the time the town-site patent became effective there were no mineral entries or valid mining claims on the subject property. Also, it may be assumed that there were no mines of gold, silver, cinnabar or copper which were known to be valuable.
At the time a town-site patent issues, there is a presumption that the proper federal agency has determined that the property covered thereby is not known to be valuable for any of the listed minerals and that there are no valid mining claims thereon.Carter v. Thompson, 65 F. 329 (Cir.Ct. Mont. 1894);Horsky v. Moran, 21 Mont. 345, 53 P. 1064 (1898). As stated by the U.S. Supreme Court, "the grant or patent, when issued, would thus be held to carry with it the determination of the proper authorities that the land patented was not subject to the exception stated." Davis v. Weibbold,supra at 529. Accord, Anderson v.Woodward, 66 Colo. 135, 180 P. 296 (1919).
In other words, if a town-site patent issues with respect to property on which there is a valid mining claim or mine known to be valuable for certain minerals, said patent is voidable but not void. As a result a town-site patent may only be set aside by the appropriate federal agency which, in this case, would be the Bureau of Land Management. Moran v. Horsky,supra; Emerson v. Kennedy Mining MillingCompany, supra. See Carter v.Thompson, supra. However, since the records of the Bureau of Land Management indicate that there have been no mineral entries or valid mining claims on the subject land it is highly unlikely that the Bureau of Land Management would bring suit to set aside the Fairplay town-site patent. Furthermore, even if the Bureau of Land Management were to bring such a suit on the theory that there were mines known to be valuable for certain minerals at the time the town-site patent became effective, the Bureau of Land Management would have to bring suit on behalf of a mineral claimant. Such a suit brought now, more than 100 years after the issuance of the town-site patent, would be barred by the doctrine of laches. Moran v.Horsky, supra; Emerson v. Kennedy Mining Milling Company, supra.
In conclusion, it is my opinion that the state's title under the Fairplay town-site patent is not defeated by language in said patent which in effect excepts any mine of gold, silver, cinnabar or copper or any valid mining claim or possession held under existing laws. The state owns all of the minerals associated with the property in question.
3. It is my opinion that the State of Colorado owns certain mineral rights within the town of Fairplay. It is also my opinion that the only state agency which has authority to administer these rights on behalf of the state is the Department of Administration.
Initially, the State Mineral Resources Board had title to the subject property under deeds executed in 1938. However, in 1963 the board was abolished and no successor was named. 1963 Colo. Sess. Laws ch. 204, § 5. By executive order dated June 24, 1974, all real property formerly held by the Mineral Resources Board was transferred to the Division of Public Works, Department of Administration. (The validity of this order has never been challenged and has been implicitly ratified by subsequent legislative enactments.) In 1975, the Division of Public Works was abolished and its powers, duties and functions were assumed by the Office of State Planning and Budgeting (OSPB), with one exception which is not relevant here. 1975 Colo. Sess. Laws ch. 215, § 1 and 21. By virtue of 24-37-101(3)(c) of said statute, jurisdiction over the Fairplay property was also transferred to OSPB. In 1977, OSPB was granted specific authority to sell, lease, or exchange this property under certain conditions. 1977 Colo. Sess. Laws ch. 37, § 1 (H.B. 1570).
In 1979, the statutory authority of OSPB to sell, lease or exchange property in general was repealed and granted to the Department of Administration. 1979 Colo. Sess. Laws ch. 226, § 1 and 14. Although no specific mention was made of the authority which had been granted by H.B. 1570 with respect to the Fairplay property, transfer of said authority was effected by24-30-1302(3) of said statute. Section 1302(3) states:
 Whenever the powers, duties or functions vested by this part 13 are referred to in any other statute or in any contract or other document and designate the former Division of Public Works, or its predecessor, or the Office of State Planning and Budgeting, such designation shall be deemed to apply solely to the Department of Administration.
(Emphasis added.) Thus, it is clear that the Department of Administration has authority to sell, lease or exchange the Fairplay property under the conditions stated in H.B. 1570. Furthermore, it is clear that this authority is exclusive.
The only other state agency which could arguably have jurisdiction over the subject property would be the State Land Board. However, the Land Board's authority only extends to those lands which have been granted or may be granted to the state by the federal government. Colo. Const., art. IX, § 10. Such lands do not include lands which the state acquires by other means, such as the Fairplay property. Consequently, the Department of Administration is the only state agency which has jurisdiction over this property.
4. The Department of Administration's authority over the property in question is defined by H.B. 1570 and C.R.S. 1973,24-30-1303(1)(a) (Cum. Supp. 1979). The language of both of these statutes grants authority to the Department of Administration to lease property no longer needed for state purposes. Since mineral rights are property rights, it is my opinion that these statutes authorize the Department of Administration to lease mineral rights on the subject property.
As a general rule, ownership of minerals implies the right to lease the minerals. Clevenger v. Continental OilCompany, 149 Colo. 417, 369 P.2d 550 (1962). However, with respect to administrative agencies such as the Department of Administration, it is a well-recognized principle of law that such agencies cannot exceed the authority conferred on them by statute. Any actions which exceed the scope of the delegated powers are void. Flavell v. Department of Welfare,144 Colo. 203, 355 P.2d 941 (1960); Walpole v. State Board ofLand Commissioners, 62 Colo. 554, 163 P. 848 (1917);Rodgers v. Atencio, 608 P.2d 813 (Colo.App. 1979);City and County of Denver v. Gibson, 37 Colo. App. 130,546 P.2d 974 (1975); State of Coloradov. Adolph Coors Corporation, 29 Colo. App. 240, 486 P.2d 43
(1971). Thus, the Department of Administration can only lease the minerals on the Fairplay property if it is authorized to do so by statute. See Centennial v. Littleton,154 Colo. 191, 390 P.2d 471 (1964). But see Farnik v.Commissioners, 139 Colo. 481, 341 P.2d 467 (1959). Such statutory authority is found in H.B. 1570 and C.R.S. 1973,24-30-1303(1)(a) (Cum. Supp. 1979).
Pursuant to H.B. 1570, the Department of Administration may convey the Fairplay property and interests therein with certain limitations. Section 1 of that act states that the Department of Administration is authorized to:
 sell by private negotiation or at public auction, to exchange for property of like or similar value and utility, or to lease separate parcels of real property no longer needed for state purposes . . .
Likewise, C.R.S. 1973, 24-30-1303(1)(a) (Cum. Supp. 1979) authorizes the Department of Administration to: "negotiate and execute leases of state-owned property not presently needed for state use." It is my opinion that the language of these statutes authorizes the leasing of mineral rights.
It is clear under Colorado law that mineral rights are property rights which are included in the ownership of the surface unless the mineral and surface estates have been severed. Radke v.Union Pacific Railroad, 138 Colo. 189, 334 P.2d 1077 (1958);Clevenger v. Continental Oil Company, supra; C.R.S. 1973, 38-30-107. Thus, the Department of Administration's authority to lease "real property" or "state-owned property" would include the authority to lease mineral rights.Clevenger v. Continental Oil Company,supra.
In addition to being within its explicit statutory authority, the leasing of mineral rights on the Fairplay property by the Department of Administration would be consistent with the limitations imposed on the department by H.B. 1570. Under sections 3 and 4 of H.B. 1570, the state is required to reserve "all oil, gas and other minerals and mineral rights" if the Fairplay property were sold or exchanged. Although this evidences a clear legislative intent that the state retain ownership of said rights in the event of sale or exchange, it does not evidence an intent that said property and/or mineral rights not be leased. A lease does not convey ownership interests in property but merely permits certain uses with respect thereto. Accordingly, if the Department of Administration were to lease the mineral rights on the subject property, said lease would not exceed the scope of authority delegated by H.B. 1570.
SUMMARY
In 1975, as the result of a quiet title action, the state acquired ownership of certain property and mineral rights in the town of Fairplay, Park County, Colorado. This ownership has not been nor could it be defeated by language in the town-site patent from the federal government to the predecessor of the town of Fairplay. The state agency which has exclusive statutory authority to lease said mineral rights is the Department of Administration.
Very truly yours,
 J.D. MacFARLANE Attorney General
MINERAL RIGHTS PROPERTY, STATE STATUTORY CONSTRUCTION
1963 Colo. Sess. Laws ch. 204, § 5 at 725 (no statutory cite — repeal of a group of statutes) 1975 Colo. Sess. Laws ch. 215, § 21 at 822 (no statutory cite — repeal of a group of statutes) 1977 Colo. Sess. Laws ch. 37, § 1 at 217 (no statutory cite — involves conveyance of land owned by state) 1979 Colo. Sess. Laws ch. 226, § 14 at 889 (no statutory cite — repeal of a group of statutes)
C.R.S. 1973, 38-30-107
C.R.S. 1973, 24-37-101(3)(c) (Cum. Supp. 1979) C.R.S. 1973, 24-30-1302(3) (Cum. Supp. 1979) C.R.S. 1973, 24-30-1303(1)(a) (Cum. Supp. 1979) C.R.S. 1973, 24-30-102(1) (1975 Colo. Sess. Laws ch. 215, § 1 at 815) C.R.S. 1973, 24-30-1301 et seq. (1979 Colo. Sess. Laws ch. 226, § 1 at 879)
Colo. Const. art. IX, § 10
ADMINISTRATION, DEPT. OF Administration
In 1975, as the result of a quiet title action, the state acquired ownership of certain property and mineral rights in the town of Fairplay, Park County, Colorado. This ownership has not been nor could it be defeated by language in the town-site patent from the federal government to the predecessor of the town of Fairplay. The state agency which has exclusive statutory authority to lease said mineral rights if the Department of Administration.